No. 25-1021

# In the United States Court of Appeals for the Fourth Circuit

TELIA KIVETT, KARYN MULLIGAN, WAKE COUNTY REPUBLICAN PARTY, NORTH CAROLINA REPUBLICAN PARTY, AND REPUBLICAN NATIONAL COMMITTEE;
*Plaintiffs-Appellees*

v.

NORTH CAROLINA STATE BOARD OF ELECTIONS, *ET AL.*,
*Defendants-Appellants*

———————————————

From the United States District Court
for the Eastern District of North Carolina
The Honorable Richard E. Myers II (No. 5:25-CV-00003-M-BM)

———————————————

**PLAINTIFFS-APPELLEES' RESPONSE IN OPPOSITION TO
DEFENDANTS-APPELLANTS' MOTION TO STAY AND REQUEST FOR
AN IMMEDIATE ADMINISTRATIVE STAY PENDING RULING ON STAY
MOTION**

———————————————

PHILLIP J. STRACH
JORDAN A. KOONTS
**NELSON MULLINS RILEY &
SCARBOROUGH LLP**
301 HILLSBOROUGH ST., SUITE 1400
RALEIGH, NORTH CAROLINA 27603
PH: (919) 329-3800
PHIL.STRACH@NELSONMULLINS.COM
JORDAN.KOONTS@NELSONMULLINS.COM
*Counsel for Plaintiffs-Appellees*

**INTRODUCTION**

This case presents a novel question of purely state law. Specifically, Plaintiffs contend that Defendants' administration of the November 5, 2024, general elections contests for state offices was unlawful insofar as it failed to comply with the information collection requirements and cure procedures provided by North Carolina law including, *inter alia*, North Carolina General Statute § 163-82.4 *et seq*. Because of Defendants' violations of state law, Plaintiffs allege that the rights guaranteed to them by North Carolina law and the North Carolina Constitution were violated. Accordingly, Plaintiffs sought relief in North Carolina state court.

What Plaintiffs do not plead is any harm under or relief arising from federal law. In fact, Plaintiffs affirmatively disclaim any such arguments. Nevertheless, Defendants swiftly removed this matter to federal court, reciting the same prepackaged language which has become familiar to them throughout various iterations of litigation surrounding their administration of the November 5, 2024 general election.

The District Court rightly recognized that the issues presented by this matter were exclusively unsettled questions of state law with extreme federalism implications. Accordingly, the District Court abstained from further rulings and remanded the matter to state court. Upon the issuance of the remand order, Plaintiffs reengaged the state court in order to seek relief. Now, over a full day later,

Defendants asks this Court to take the extraordinary step of inserting itself into ongoing state court proceedings and ordering their cessation. Defendants can cite to no authority warranting such an extreme proposition and the Motion to Stay should be denied accordingly.

## STATEMENT

Plaintiffs filed their Verified Complaint against the North Carolina State Board of Elections ("NCSBE") in Wake County Superior Court on December 31, 2024. *See Kivett, et al. v. NCSBE, et al.*, Case No. 24-CV-0417890910; *see also Kivett, et al. v. NCSBE, et al.*, Case No. 5:25-cv-00003-M-BM (E.D.N.C. 2025), at D.E. 1-4 ("Compl."). Plaintiffs allege that the NCSBE, its members, and its executive director violated state law and the state constitution by failing to collect certain information from persons registering to vote—namely, their driver's license number or the last four digits of their social security number—despite the information being required under state law. *See* N.C. Const. art. VI § 3 (requiring that all persons wishing to vote in North Carolina's elections to be "registered); N.C.G.S. § 163-82.3 (delegating the power to create a statewide voter registration form to the NCSBE); N.C.G.S. §163-82.4(a)(11)(requiring that a voter registration application must collect, amongst other things, the applicant's driver's license number or the last four digits of their social security number before the registration may be processed). Compl. ¶¶ 1-2, 30-32. Specifically, Plaintiffs allege that for over

a decade the NCSBE employed a voter registration form which failed to collect this required information on the front end. *Id.* at ¶¶ 48-50. Then, the NCSBE affirmatively refused to follow the statutory cure procedure required for any ballot returned by a voter with a deficient registration form to be counted. *See* N.C.G.S. § 82.4(f); *see also* Compl. at ¶¶ 50-57.

Count one seeks a writ of mandamus and a mandatory injunction to address an alleged violation of N.C.G.S. §163-82.4. Compl. at ¶¶ 60-76 . Count two seeks a mandatory injunction to address Defendants' violations of article I section 10 of the North Carolina Constitution. *Id.* at ¶¶ 77-85. Count three seeks a mandatory injunction to address Defendants' violations of article I section 19 of the North Carolina Constitution. *Id.* at ¶¶ 86-93. Count four seeks a declaratory judgment and injunctive relief regarding Defendants' affirmative refusal to follow N.C.G.S. §163-82.4(f). *Id.* at ¶¶ 94-103. Recognizing the gravamen of the issues presented and the relief requested, Plaintiffs requested the implementation of a judicial procedure requiring Defendants to timely solicit, collect, and confirm the missing voter registration information which they should have obtained under state law. *Id.* at Prayer for Relief ¶2(c).

On January 2, 2025, Plaintiffs filed a motion for a temporary restraining order and injunctive relief with the Wake County Superior Court. *See* Ex. 1, attached hereto. That same day, Plaintiffs requested an emergency motions setting. *See* Ex.

2, attached hereto. Hours later, Defendants removed the matter to the Eastern District of North Carolina, vaguely citing several grounds for removal, including 28 U.S.C. §§ 1331, 1441(a), 1443(2), and 1367(a) as well as generalized statements that Plaintiffs' relief somehow invokes various federal statutes such as the Help America Vote Act ("HAVA") Pub. L. No. 107-252, 116 Stat. 1666 (2002) codified at 52 U.S.C. § 20901, *et seq.*, and the National Voter Registration Act ("NVRA"), Pub. L. No. 103-31, 107 Stat. 77 (1993) codified at 52 U.S.C. § 20501, *et seq.* and that Plaintiffs are in some way asking Defendants to take actions "inconsistent" with certain statutes such as the Voting Rights Act ("VRA") 52 U.S.C. § 10101, *et seq.* *See Kivett, et al.*, Case No. 5:25-cv-00003-M-BM, at D.E. 1.

On January 3, 2025, Plaintiffs filed their motion to remand the matter to state court. *Id.* at D.E. 17. In support of the motion, Plaintiffs argued that, among other things, the absence of any federal claims or relief—express or implicit—rendered removal wholly improper. *Id.* at D.E. 18. Plaintiffs also argued that, because the complaint's allegations and relief sought are novel questions of state law, that the district court should remand the matter due to the significant federalism concerns presented. *Id.* On January 6, 2025, the district court entered an Order remanding the matter to state court due to the district court's invocation of abstention doctrines under *Burford v. Sun Oil Co.*, 319 U.S. 315, 317-18 (1943), and *Lousiana Power & Light Co. v. Thibodaux*, 360 U.S. 25, 28-29 (1959). *See* D.E. 21, at p. 11 (citing

Order in *Griffin v. North Carolina State Board of Elections, et al.*, Case No. 5:24-CV-00724-M (hereinafter, "*Griffin* Order")).

The district court's remand order found that sufficient similarities existed between this matter and the concurrently pending case, *Griffin v. North Carolina State Board of Elections, et al.*, Case No. 5:24-CV-00724-M (E.D.N.C. 2024) ("*Griffin*").[1] *See Kivett, et al.*, Case No. 5:25-cv-00003-M-BM, at D.E. 21, at p. 11. Accordingly, the remand order stated that the same reasons warranting abstention and remand as set forth in the *Griffin* applied with equal force to this matter. *See id.* Soon after issuing its remand order the district court transmitted a letter regarding the remand to the clerk of court for the Wake County Superior Court. *See id.* at D.E. 22. Pursuant to the remand, Plaintiffs then sought an emergency motion setting from the state court, which remains pending.

## ARGUMENT

This Court should decline to stay the state court's proceedings pending appeal and Defendants' Motion should be denied because: (1) Defendants' Motion is procedurally defective and not properly before this Court; (2) even if this Motion

---

[1] While Plaintiffs contend that abstention and remand was proper here, they maintain that the allegations and claims for relief presented by this case versus *Griffin* are sufficiently factually distinct as to render them separate matters. However, due to Defendants' incorporation of their Motion to Stay in *Griffin* by reference here, Plaintiffs respond to the arguments accordingly. *See* Motion to Stay, *Griffin v. NCSBE, et al.*, Case Nos. 25-1018 and 25-1019 (4th Cir. 2025) (hereinafter "*Griffin* Motion").

was properly in front of the Court, a stay pending appeal is inappropriate under relevant precedent; and (3) Defendants' requested relief would require this Court to embark into uncharted territories, mired with significant federalism concerns.

## I. Defendants' Motions is Procedurally Defective and Not Properly Before the Court

As a threshold matter, Defendants' Motion fails to comply with the Rules of Appellate Procedure, rendering it procedurally defective and an untenable basis for relief. Rule 8 of the Federal Rules governs motions for a stay pending appeal, providing that such motions "must ordinarily" be made "first in the district court." Fed. R. App. P. 8(a)(1). While the Rule does contemplate the possibility of the motion being made to this Court, it is clear that the motion must meet certain criteria; in particular, if a motion to stay pending appeal is made first to this Court, then the motion must:

> "(i) show that moving first in the district court would be impracticable; or
>
> (ii) state that, a motion having been made, the district court denied the motion or failed to afford the relief requested and state any reasons given by the district court for its action."

*Id.* at 8(a)(2)(A)(i)(ii).

As described further herein, Defendants cannot meet these minimum requirements. What both motions request is, both in form and function, a request to amend the district court's judgment. However, under Federal Rule of Civil

Procedure 52(b), that motion should have been made with the district court. No party made such a motion. Now, Defendants ask this Court to cure these glaring omissions.

### a. Defendants Cannot Satisfy Rule 8's Requirements.

At base, Defendants failed to request a stay of the district court's order in either this case or the *Griffin*. Notably, the district court in *Griffin*, entered a show cause order, requiring Defendants to brief why the matter should not be remanded. *See Griffin*, Case No. 5:24-cv-00724, at Text Order, Dec. 26, 2024. Despite the district court's signaling that it was considering the possibility of a remand, Defendants did not request a stay of such an order, even in the alternative. *See id.* at D.E. 39. Now, Defendants argue that it would have been impracticable for them to request such a stay due to the timing of the district court's order.[2] *See* Motion to Stay, *Kivett, et al. v. NCSBE, et al.* Case No. 25-1021 (4th Cir. 2025), at D.E. 21, pp. 3-4 (hereinafter, "*Kivett* Motion"); *see also Griffin* Motion, at p. 10 n.3. But Defendants' actions in prior proceedings in cases in front of the same district court judge belie this position where, at the hearing in district court, Defendants requested that, if the district court was inclined to enter a remand order, that it stay its order to

---

[2] Defendants also argue that the district court's remand order fits into Rule 8(a)(2)(A)(ii)'s conditions because by remanding the case, the district court "failed to afford the relief [Defendants] requested." *See Kivett* Motion, at p. 4; *see also* Fed. R. App. P. at 8(a)(2)(A)(ii). Defendants' arguments misconstrue the context and purpose of this rule, which plainly contemplates a motion being made and the district court granting the moving party less than what they asked for. Defendants made no such motion here.

allow Defendants time to appeal. *See* Ex. 3 attached hereto, *Republican Nat'l Comm. v. N. Carolina State Bd. of Elections*, No. 5:24-CV-00547-M (E.D.N.C. 2024), at Oct. 17, 2024 Hrg. Tr., at 17:7-12; *see also Republican Nat'l Comm. v. N. Carolina State Bd. of Elections*, No. 5:24-CV-00547-M, 2024 WL 4523912, at \*22 (E.D.N.C. Oct. 17, 2024) (granting Defendants' request for a stay of the remand order). Simply put, Defendants had the opportunity to request for a stay of any remand order, and they simply chose not to.[3]

Defendants cannot show that moving for a stay pending appeal in the district court would be impracticable. *See* Fed. R. App. P. 8(a)(2)(A)(i). Instead, Defendants attempt to bypass what Rule 8 generally requires of parties seeking a stay and have this Court countenance Defendants' choices to not request a stay in the first place. Having failed to do so, Defendants' motion cannot meet what the Rules require of them. The district court remanded the matter to state court where it is currently proceeding. Not only is Defendants' request for a *post hoc* stay both untimely and ineffective, but they offer no basis upon which a stay can or should be effectuated now.

---

[3] The fact that there was no such briefing schedule or order entered in the present matter is of no effect. Not only were Defendants aware of the similar theories presented in this case and *Griffin*—indeed, they removed both on virtually identical grounds with practically verbatim motions—but the district court here issued the order *sua sponte* due to its ongoing obligations to independently assess its own jurisdiction over a matter. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 480 (4th Cir. 2005).

**II.** **Even if this Motion Was Properly In Front of the Court, A Stay Is Inappropriate.**

A stay pending appeal is only appropriate where (1) the stay applicant has "made a **strong showing**" of likelihood of success on the merits; (2) the stay applicant will be irreparably injured without the requested stay; (3) issuance of the stay will not substantially injure the nonmovants; and (4) the public interest favors a stay. *Nken v. Holder*, 556 U.S. 418, 434 (2009) (emphasis added). Even if Defendants' Motion was properly before the Court, a stay is not appropriate here for two reasons:

*First*, Defendants cannot make a strong showing that they are likely to succeed on the merits of their appeal, as the District Court appropriately abstained from ruling over the novel issues of state law presented by Plaintiffs' complaint.

*Second*, Plaintiffs, not Defendants would be irreparably harmed by a further stay, which would preclude effective relief in the form sought. Further, the public interest does not favor a stay to determine a discretionary jurisdictional issue rather than the prompt resolution of Plaintiffs' important claim on the merits in state court as a matter of first impression concerning novel issues of state law.

Defendants' Motion to Stay should be denied.

**a. Defendants have not made a strong showing of likelihood of success of their appeal.**

> **i. Plaintiffs' claims present novel issues of state law which state courts should resolve.**

Plaintiffs' claims do not arise under federal law pursuant to 28 U.S.C. § 1331 because (1) it cannot be decided without disrupting the federal-state balance approved by Congress and (2) it does not necessarily raise a substantial, actually disputed issue of federal law. *See Old Dominion Elec. Coop. v. PJM Interconnection, LLC*, 24 F.4th 271, 280 (4th Cir. 2022) (quoting *Gunn v. Minton*, 568 U.S. 251, 258 (2013)), *cert. denied*, 143 S. Ct. 87 (2022).

The district court correctly declined Defendants' invitation to disrupt the federal-state balance by deciding novel issues of state law. Whether Defendants' conduct violates the North Carolina Constitution and North Carolina law is squarely an issue of state law. Further, Plaintiffs' allegations and requested relief expressly disclaims any relation to or effect on federal law. *See* Compl. at ¶¶ 73, n.5; *see also id.* at Prayer for Relief. Beyond generalized statements, Defendants offer nothing to rebut these claims and, considering the well-pleaded complaint rule which governs, a remand was warranted. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

As the district court reiterated, allowing states to interpret their own constitutions is a foundational principle of federalism. *See Griffin* Order, at pp. 20-26. Federal courts are not meant to be the arbiters of state constitutional questions,

and wading into an issue of first impression like that presented by Plaintiffs here would elide the proper relationship between the state and federal courts. *See Minnesota v. Nat'l Tea Co.*, 309 U.S. 551, 557 (1940) ("It is fundamental that state courts be left free and unfettered by [federal courts] in interpreting their state constitutions."). Tellingly, Defendants' brief fails to meaningfully engage with the balance of federalism that was key to the district court's decision. These issues were so crucial and clearly presented, in fact, that the district court did not feel compelled to decide on the merits the first three *Grable-Gunn* factors.

Further, Defendants cannot make a strong showing that any of Plaintiffs claims actually disputed questions of federal law, especially considering Plaintiffs' express disclaimers of any such connections. *See* Compl. at ¶¶ 73, n.5; *see also id.* at Prayer for Relief. Defendants wholly ignore the substance of Plaintiffs' requested relief and instead raise the specter of federal law in an attempt to invoke jurisdiction. But it is well-settled that federal defenses or impediments to relief are not proper bases for jurisdiction. *See Common Cause v. Lewis*, 358 F. Supp. 3d 505, 514 (E.D.N.C. 2019), *aff'd*, 956 F.3d 246 (4th Cir. 2020).

These issues notwithstanding, the district court found that removal under 28 U.S.C. §1443(2) was proper here.[4] Thus, the only remaining question for appeal is whether the district court's abstention was proper here. It was.

### ii. The Court correctly abstained from the questions presented by Plaintiffs' complaint.

A district court's decision to abstain from a matter is reviewed for an abuse of discretion. *See Martin v. Stewart*, 499 F.3d 360, 363 (4th Cir. 2007) (citing *Harper v. Pub. Serv. Comm'n*, 396 F.3d 348, 357–58 (4th Cir. 2005)). "*Burford* permits abstention when federal adjudication would "unduly intrude" upon "complex state administrative processes" because either: (1) "there are difficult questions of state law ... whose importance transcends the result in the case then at bar"; or (2) federal review would disrupt "state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Martin*, 499 F.3d at 364 (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 361-63, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989)).

---

[4] Plaintiffs contend that this conclusion was improper for several reasons, not the least of which is that a person who was never properly registered under state law could not, by definition, be a covered person within the NVRA's scope. *Compare Virginia Coal. for Immigrant Rts. v. Beals*, No. 24-2071, 2024 WL 4601052, at *1-2 (4th Cir. Oct. 27, 2024) (declining to adopt state's argument that a person who is not qualified to vote in the first instance cannot be covered by the NVRA's quiet provision); *with Beals v. VA Coal. for Immigrant Rts.*, No. 24A407, 2024 WL 4608863 (U.S. Oct. 30, 2024) (granting emergency stay and allowing the state to remove non-citizens from its voter rolls).

Here, the district court correctly determined that the questions presented by Plaintiffs' complaint pose novel issues of state law and that inserting itself into such questions would vastly disrupt state law and state policies. Similarly, the district court found that exercising jurisdiction would require it forecast the "dubious and tentative" types of state law forecasts which the Supreme Court has cautioned against. *See Louisiana Power& Light Co. v. City of Thibodeaux*, 360 U.S. 25, 28-29 (1959). The district court was correct in both these observations.

After conducting an extensive review of both abstention doctrines and their relevant progeny, the district court determined that these principles militated in favor of abstention. *See Griffin* Order, at pp. 20-26. Because Defendants cannot show that the district court abused its discretion in weighing these principles of federalism, Defendants cannot make the "strong showing" of likelihood of success on the merits which is required for a stay. *See Nken*, 556 U.S. at 434.

### a. The Remaining Factors Weigh Against Entry of Stay

Defendants have failed to demonstrate a "strong showing" of likelihood of success on the merits, making a stay unwarranted regardless of the Court's evaluation of the other factors. Nevertheless, the remaining factors also weigh against granting a stay.

### i. Plaintiffs, Not Defendants or Intervenor Defendants, Will Suffer Irreparable Harm

The second and third factors are whether "the stay applicant will be irreparably injured without the requested stay" and whether "issuance of the stay will not substantially injure the nonmovants[.]" *Nken*, 556 U.S. at 434. These factors weigh against the granting of a stay because, contrary to Defendants' assertions, the irreparable harm lies not with them but with Plaintiffs if a stay is granted. It is the Plaintiffs who, by their lawsuit, seek to ensure that North Carolina's elections for state office and their results are conducted fairly and in compliance with the State's constitution and laws. With certification of the remaining state office election contests imminent, time is of the essence. Allowing a stay would preclude Plaintiffs from effective relief prior to the election in which potentially ineligible individuals are voting. This alone weighs strongly against granting the requested stay. *See, e.g., Common Cause v. Rucho,* 284 F. Supp. 3d 780, 786 (M.D.N.C. 2018) (finding risk of impending election being conducted in unconstitutional manner to be a "substantial risk weigh[ing] strongly against granting the requested stay").

More simply—without prompt resolution of Plaintiffs' claim on the merits, any harm resulting from improper votes being cast would be irreversible. If the case is delayed and elections are certified with ineligible voters participating, the election results cannot be undone. The potential disenfranchisement of valid voters due to vote dilution and harm caused by ineligible voters far outweighs any speculative

procedural harm to Defendants, especially when Plaintiffs' requested relief provides a comprehensive process to verify the eligibility of affected persons in the manner Defendants were required to follow but refused to do in the first place. *See* Compl. at Prayer for Relief, ¶2(c).

### ii.    Public Interest Strongly Favors Denying a Stay

Public interest "weighs heavily" in favor of Plaintiffs because the integrity of the election is at risk. *See Democracy N. Carolina v. N. Carolina State Bd. of Elections*, 476 F. Supp. 3d 158, 237 (M.D.N.C. 2020). The public interest is best served by allowing the state court to resolve these urgent election-related state constitutional issues without delay. Indeed, it "is the state judiciary that has the responsibility to protect the state constitutional rights of the citizens; this obligation to protect the fundamental rights of individuals is as old as the State." *Corum v. Univ. of N. Carolina Through Bd. of Governors*, 330 N.C. 761, 783, 413 S.E.2d 276, 290 (1992). Further, the District Court acknowledged that allowing states to interpret their own constitutions is a foundational principle of federalism. *See Griffin* Order, at pp. 25-26 (citing *Gregory v. Ashcroft*, 501 U.S. 452, 457 (1991). In light of these principles, it is imperative that no stay be entered so the state court may take prompt action to uphold the constitutional rights of its citizens and the voting process.

Defendants argue that a stay serves the public interest by conserving judicial resources and avoiding duplicative litigation. *See Griffin* Motion, at pp. 24-25. But

while "'stability and consistency are also virtues' when it comes to elections, the infringement of the fundamental right to vote poses a far greater risk." *See Democracy N. Carolina*, 476 F. Supp. 3d at 237. Defendants' pursuit of a stay while they appeal a perceived procedural issue risks delaying any decision on the merits of Plaintiff's claim for an untold length of time, only to then determine which court will decide novel issues of state law. The public has no interest in such an outcome.

Further, denying a stay will not harm Defendants as their rights to an appeal will continue in full force and effect. Indeed, the prospect that Defendants' rights to an appeal in this Court would be rendered a nullity is contrary to reality. Plaintiffs' case is currently pending with the state trial court, two levels removed from the state's highest level of appellate review. Defendants cannot cite to any authority beyond their own speculation that allowing concurrent litigation to proceed somehow harms them, especially when staying the state court litigation would severely harm Plaintiffs.

III.    **Defendants Cite No Authority or Precedent Allowing This Court to Stay Ongoing State Court Proceedings Once a Remand is Effectuated.**

Unlike the typical posture in which a stay pending appeal is presented, here, the case has already been remanded to state court where it is proceeding. Defendants are equally as entitled to pursue their appeal here as Plaintiffs are entitled to proceed in state court. Defendants' Motion is tellingly devoid of any robust discussions of the significant federalism concerns which would arise, should this Court dictate to a

state court how it should proceed (or decline to proceed) with a matter currently under its consideration. Instead, Defendants cite a single First Circuit case, *Forty Six Hundred LLC v. Cadence Educ., LLC*, 15 F.4th 70, 79 (1st Cir. 2021), for the idea that federal courts routinely take such actions. *See Griffin* Motion, at pp. 24-25. This could not be further from the truth. In fact, the very case Defendants rely upon has not been cited or adopted by any other Circuit Courts of Appeal, including this one.

In both form and substance, Defendants ask this Court to order a state court how to handle its case. In other contexts, requests such as this are routinely denied, and for good reason. *See, e.g.*, *Younger v. Harris*, 401 U.S. 37, 91 (1971). The North Carolina state courts are fully competent to determine issues of state law, much like this Court is capable of determining the narrow issue of abstention presented by Defendants' appeal. This Court should decline Defendants' invitation to inject itself into the normal progression of state court litigation and the Motion to Stay should be denied accordingly.

## CONCLUSION

Because Defendants have failed to satisfy the requirements of Rule 8 of the Federal Rules of Appellate Procedure, and Defendants have failed to establish how a stay of ongoing state court proceedings is supported by relevant case law or precedent, Plaintiffs respectfully request that the Motion to Stay be denied.

*     *     *     *

Respectfully submitted, this, the 8th day of January, 2025.

NELSON MULLINS RILEY &
SCARBOROUGH LLP

By: /s/ Phillip J. Strach
Phillip J. Strach
North Carolina State Bar no. 29456
Jordan A. Koonts
North Carolina State Bar no. 59363
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Ph: (919) 329-3800
phil.strach@nelsonmullins.com
jordan.koonts@nelsonmullins.com

*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF COMPLIANCE

Undersigned counsel certifies that this motion complies with Fed. R. App. P. 27(d)(2)(C), 32(a)(5), 32(g)(1), and Local Rule 27.

Respectfully submitted this, the 8th day of January, 2025.

/s/ Phillip J. Strach
Phillip J. Strach

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed with the Clerk of Court using the CM/ECF system, which will automatically serve electronic copies upon all counsel of record.

Respectfully submitted this, the 8th day of January, 2025.

/s/ Phillip J. Strach
Phillip J. Strach

## APPENDIX TO MOTION

| No. | Exhibit | Page |
|---|---|---|
| 1 | Plaintiffs' Motion for Temporary Restraining Order and Injunctive Relief filed in *Kivett, et al. v. NCSBE, et al.*, Case No. 24-CV-0417890910.......................................................... | 4 |
| 2 | 01/02/2025 Email Communication to Wake County Superior Court re Emergency Motion Setting........................................ | 4 |
| 3 | Excerpt from Oct. 17, 2024 Hearing Transcript in *Republican Nat'l Comm. v. N. Carolina State Bd. of Elections*, No. 5:24-CV-00547-M (E.D.N.C. 2024)................................................ | 9 |

# Exhibit 1

WAKE COUNTY

TELIA KIVETT; KARYN MULLIGAN; WAKE COUNTY REPUBLICAN PARTY; REPUBLICAN NATIONAL COMMITTEE; and NORTH CAROLINA REPUBLICAN PARTY,

*Plaintiffs*,

v.

NORTH CAROLINA STATE BOARD OF ELECTIONS; KAREN BRINSON BELL, in her official capacity as Executive Director of the North Carolina State Board of Elections; ALAN HIRSCH, in his official capacity as Chair of the North Carolina State Board of Elections; JEFF CARMON, in his official capacity as Secretary of the North Carolina State Board of Elections; STACY EGGERS IV, KEVIN N. LEWIS, and SIOBHAN O'DUFFY MILLEN, in their official capacities as members of the North Carolina State Board of Elections,

*Defendants*.

**MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

*Emergency Relief Requested*

NOW COMES Plaintiffs Telia Kivett, Karyn Mulligan, the Wake County Republican Party ("Wake GOP"), the Republican National Committee ("RNC"), and the North Carolina Republican Party ("NCGOP"), by and through undersigned counsel and pursuant to Rule 65 of the North Carolina Rules of Civil Procedure, move this Court to issue a temporary restraining order and preliminary injunction. Specifically, this Court should order Defendants to identify and segregate ballots cast in the November 5, 2024 state office general election contest by persons whose voter registration forms were returned missing the information required by N.C. Gen. Stat. § 163-82.4(a)(11), determine which of those persons, if any, was validly assigned a voter identification number as provided by N.C. Gen. Stat. § 163-82.4(c), and for those persons who were not validly

provided such a number, remove their votes from final election counts for all state election contests in the November 5, 2024 state office general election contests. Alternatively, Defendants should be ordered to comply with a judicially created process wherein such affected individuals may be afforded an expedited but reasonable time to provide the information which the NCSBE should have collected in accordance with N.C. Gen. Stat. § 163-82.4(f), and if such information is not received by said date, then Defendants must remove the person's vote from the final election counts for all state office election contests in the November 5, 2024 state office general election. In support of this Motion, Plaintiffs show the Court as follows:

## **INTRODUCTION**

1.     North Carolina law requires that persons wishing to vote in the state's elections register following state law. *See* N.C. Const. art. VI § 3; N.C. Gen. Stat. §§ 163-82.3, .4, and .11.

2.     Importantly, North Carolina requires that the voter registration form collects, among other things, an applicant's driver's license number or social security number. *See* N.C. Gen. Stat. § 163-82.4(a)(11). North Carolina law does not provide for any deviation or wholesale ignoring of this requirement,[1] yet that is exactly what the NCSBE has done.

3.     Failure to collect this information on the front end means that the registration is incomplete and, by definition, the person is not "registered" under North Carolina law.

4.     Nevertheless, the General Assembly established clear statutory procedures and timelines to collect the missing information and remedy these deficiencies in a timely manner to

---

[1] North Carolina law does have a provision for individuals who do not have either a driver's license number or a social security number, providing that that specific subset of person may be assigned a unique voter identification number. *See* N.C. Gen. Stat. § 163-82.4(b). However, this provision only applies if it is confirmed that the registrant does not have this information. It is not an alternative to the general collection requirements and procedures set forth in N.C. Gen. Stat. § 163-82.4(a)(f), nor does it absolve the NCSBE of their violations of state law here.

determine if the affected person is qualified to register to vote and if their vote may be counted. *See* N.C. Gen. Stat. §163-82.4(f).

5.     This statutory failsafe notwithstanding, the NCSBE willingly failed to timely collect this information from at least 60,000 voters with incomplete registration forms, and it has counted those votes in the November 5, 2024 general election for state offices. This is a plain violation of state law.

6.     In the aftermath of the November 5, 2024 general election, the NCSBE's counting of unlawful votes would be outcome determinative for many state and local races, several of which currently have razor-thin margins. To allow those unlawful votes to decide the outcome of such state and local races would fundamentally undermine democracy—a democracy in which eligible voters alone should decide electoral outcomes.

7.     Defendants' brazen failure to comply with state law forces Plaintiffs to turn to this Court for urgent relief.

8.     Plaintiffs initiated this action by filing a Complaint for declaratory and injunctive relief on December 31, 2024. Individual Plaintiff Telia Kivett subsequently filed a verification of the Complaint soon thereafter.

9.     Plaintiffs' Complaint seeks several forms of relief, including:

   a.  a writ of mandamus ordering Defendants to comply with the practices and procedures set forth in N.C. Gen. Stat. § 163-82.4(f);

   b.  injunctive relief requiring the identification and segregation of ballots cast by affected persons, determination of whether those persons were validly registered,

removal of all unauthorized votes, and ordering Defendants to remedy the missing

information prior to the next election[2]; and

c.   declaratory judgments to reverse the NCSBE's unlawful course of action, declaring

that persons who fail to provide information required by N.C. Gen. Stat. § 163-

82.4(a)(11) are not lawfully registered to vote under North Carolina law, and that

all persons with incomplete voter registration forms must provide complete

information and otherwise comply with North Carolina law to be considered

lawfully registered voters.

(Compl., Prayer for Relief).

## FACTUAL BACKGROUND

10.     Article VI, § 3 of the North Carolina Constitution requires that any person wishing

to vote must be registered. (Compl. ¶¶ 1, 31).

11.     The North Carolina General Assembly sets forth express authority for the NCSBE

to promulgate a registration form. Express statutory authority identifies certain information that

<u>must</u> be collected before the application can be process and an applicant deemed "registered," and

likewise identifies specific categories of information that, while required, shall not be the basis for

a registration form's denial. (Compl. ¶¶ 32-33). An applicant's driver's license number or social

security number is one of the non-negotiable, required categories of information which must be

collected before a registration form may be processed and deemed "complete."

---

[2] Alternatively, Plaintiffs seek the creation and implementation of a judicial process providing
affected persons an expedited but reasonable amount of time to provide the information the
NCSBE should have timely collected in the first instance and, if the information is not provided
by a set date, then Defendants must be ordered to discount all impacted ballots from all state
contests in the November 5, 2024 state office general election.

12. North Carolina elections law further mandates that the NCSBE collect any missing information in a timely manner for any ballots case by the applicant to count in future elections, including a driver's license or social security number. (*Id.* ¶ 34).

13. Defendants have flouted this law for at least a decade, using a statewide voter registration form that failed to collect a registrant's driver's license number and/or the last four digits of their social security number, resulting in approximately 225,000 voter registrations. (*Id.* ¶¶ 49-50). They refused to remedy their noncompliance with state law prior to the November 5, 2024 election, under the theory that the unlawfully registered voters would filter themselves out at the polls through other unrelated voting requirements. (*Id.* ¶¶ 51-54).

14. That position not only violated state law, but also turned out to be incorrect: post-election audits performed by third parties using documents provided by the NCSBE pursuant to public records requests confirmed that at least 60,000 people voted in North Carolina's November 5, 2024 state office general election contests without providing either a driver's license number or a social security number, and even if these voters provided a driver's license number pursuant to N.C. Gen. Stat. § 163-166.16, neither the NCSBE nor the County Boards made any record of such. (*Id.* ¶¶ 55-56).

15. As of the date of this Motion, the time for county canvasses has passed, and the NCSBE and the County Boards failed to collect the information required by N.C. Gen. Stat. § 163-82.4(a)(11) in the manner and time demanded by § 82.4(f) for at least 60,000 persons who cast ballots in the November 5, 2024 state office general election contests. Defendants have therefore plainly violated North Carolina law, and judicial intervention is necessary.

**ARGUMENT**

16.     Plaintiffs seek injunctive relief because they will be seriously and irreparably harmed by Defendants' actions in permitting unlawfully registered voters to have their votes counted in the recent November 5, 2024 state elections and in future such elections.

17.     Without the requested injunctive relief, Defendants have certified and will continue to certify state and local elections in which the results may have been decided by persons who are not lawfully registered voters, and Defendants will continue to facilitate ongoing violations of the North Carolina Constitution. This course of action impermissibly dilutes the votes of the Individual Plaintiffs and all other duly-registered voters across the state in state and local elections and violates their constitutional rights. Similarly, this damages the missions, election-related efforts, and electoral prospects of the organizational Plaintiffs.

## I.     Legal Standard

18.     This court has the inherent authority to issue injunctive relief upon application from a party. *State v. Fayetteville St. Christian Sch.*, 299 N.C. 351, 357, 261 S.E.2d 908, 913, *on reh'g*, 299 N.C. 731, 265 S.E.2d 387 (1980) (stating that injunctive relief is "a matter of discretion to be exercised by the hearing judge after a careful balancing of the equities.").

19.     Issuance of a preliminary injunction is appropriate when necessary to avoid immediate and irreparable injury to a party. *See* N.C. R. Civ. P. 65; *see also A.E.P. Indus., Inc. v. McClure*, 309 N.C. 393, 401, 302 S.E.2d 754, 759 (1983).

20.     To demonstrate entitlement to a preliminary injunction, Plaintiffs must establish: (1) likelihood of success on the merits; and (2) that they are likely to sustain irreparable loss unless the injunction is issued, or if, in the Court's opinion, issuance is necessary for the protection of

Plaintiffs' rights during the course of the litigation. *See Ridge Cmty. Invs., Inc. v. Berry*, 293 N.C. 688, 701, 239 S.E.2d 566, 574 (1977).

21.     Notably, Plaintiffs' likelihood of success on the merits means a "reasonable likelihood." *See A.E.P. Indus., Inc.*, 308 N.C. at 402, 302 S.E.2d at 760.

## II.     <u>Plaintiffs Have Established a Reasonable Likelihood of Success on the Merits</u>

22.     Plaintiffs have established a reasonable likelihood of success on the merits of their claims based on undisputable evidence that Defendants have openly refused to comply with state law. Under the North Carolina Constitution and state law, only lawfully registered North Carolinians may vote in elections for state and local offices. *See* N.C. Const. art. VI, § 3. State law prescribes the information required to be requested of applicants. N.C. Gen. Stat. § 163-82.4(a). Furthermore, North Carolina's statutes specify that the failure to state certain categories of information (race, ethnicity, gender, or telephone number) shall not form the basis for denying an application. *Id.* ("[N]o application shall be denied because an applicant does not state race, ethnicity, gender, or telephone number."). Applying the canon of statutory construction *expressio unius est exclusio alterius* (the inclusion of one is to the exclusion of all others), the General Assembly's inclusion of those categories of information it determined should not form the basis of a denial means that the other enumerated categories of information—critically, including driver's license number or social security number—should form the basis of denial of a voter registration application. *See Evans v. Diaz*, 333 N.C. 774, 780, 430 S.E.2d 244, 247 (1993) ("[W]hen a statute lists the situations to which it applies, it implies the exclusion of situations not contained in the list.") (citation omitted).

23.     Based on the plain meaning of North Carolina's statutes, Plaintiffs have demonstrated a likelihood of success on the merits.

24.	Moreover, based on the Defendants' own conduct and admissions, Plaintiffs have demonstrated a likelihood of success on the merits. Defendants have already acknowledged that their failure to collect driver's license or social security number information was wrong when they *prospectively* changed course. (Compl. ¶¶ 49-50). But they failed to go far enough when they repeatedly and deliberately declined to correct that same violation of law for the November 5, 2024 elections for state and local offices, all under a clearly erroneous and unsupported theory that these unlawful acts would somehow remedy themselves. (*Id.* at ¶¶ 51-55) Unfortunately for Defendants—and qualified North Carolina voters—this intentional inaction only proved to cause greater harm and inject unwarranted uncertainty into the election results for contests for state offices.

25.	In light of the foregoing, Plaintiffs are reasonably likely to succeed on the merits of their claims and immediate relief is warranted.

### III.	Absent the Relief Sought, Plaintiffs Will Be Substantially and Irreparably Harmed

26.	Plaintiffs' undeniable constitutional and statutory rights to vote in free and fair elections, where only lawfully-registered voters participate, are at immediate risk, absent an injunction. *See* N.C. Const. art. VI § 3; *see also* N.C. Const. art. I § 10.

27.	Absent an injunction, organizational Plaintiffs' will be substantially and irreparably harmed in their respective missions, election-related efforts, and their electoral prospects. Further, individual Plaintiffs' constitutional rights will be substantially harmed and their votes will be impermissibly diluted. As to both sets of Plaintiffs, this harm will be exacerbated, should relief not be available before the November 5, 2024 election. Simply put, the bulk of the damage will already be done.

28.     In contrast, Defendants will suffer little if any harm, should the injunction issue. Defendants can easily identify and segregate those ballots cast by voters who failed to provide the necessary information on their voter registration applications and can just as easily account for the changes in vote tallies necessary to remove the votes of any unlawfully-registered voters.

29.     Similarly, and to the extent Defendants claim a supposed burden or risk of violations of principles of due process, Plaintiffs' prayer for relief accounts for the same, specifically requesting the creation of a judicial process which would solicit and collect the missing registration information in accordance with the statutory duties the NCSBE willfully chose to ignore. This alternative relief mitigates any such concerns or supposed burden on Defendants or persons who may be affected.

## CONCLUSION

30.     Defendants are already constitutionally prohibited from allowing the unlawfully-registered voters to vote in North Carolina's elections. Thus, to the extent Defendants claim a burden in having to ensure residency requirements of a subset of registrants, the same is already required by North Carolina law.

31.     In sum, the equities favor Plaintiffs especially insofar as they are seeking to vindicate pre-established rights and protect the validity of their votes.

WHEREFORE, Plaintiffs respectfully request this Court enter an Order:

a.     Declaring that Defendants' registration of voters who failed to provide the information required under N.C. Gen. Stat. § 163-82.4(a)(11) violates Article VI, § 3 of the North Carolina Constitution and enjoining Defendants from using the same to allow any such unlawfully registered voter to vote in North Carolina's elections for state and local offices;

b.      Directing Defendants to immediately identify and segregate those ballots cast by affected persons, determinate of whether those persons were validly registered, and remove of all unauthorized votes in elections cast in the November 5, 2024 elections for state and local offices, or alternatively, Defendants should be ordered to comply with a judicially created process wherein such affected individuals may be afforded an expedited but reasonable time to provide the information which the NCSBE should have collected in accordance with N.C. Gen. Stat. § 163-82.4(f), and if such information is not received by said date, then Defendants must remove the person's vote from the final election counts for all state office election contests in the November 5, 2024 state office general election.;

c.      Issuing a writ of mandamus requiring Defendants to immediately begin complying with the processes outlined in N.C. Gen. Stat. §§ 163-82.4(f) prior to any future election; and

d.      For any other relief deemed just and proper.

Respectfully submitted, this, the 2nd day of January, 2025.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: /s/   Phillip J. Strach
Phillip J. Strach
North Carolina State Bar no. 29456
Jordan A. Koonts
North Carolina State Bar no. 59363
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Ph: (919) 329-3800
phil.strach@nelsonmullins.com
jordan.koonts@nelsonmullins.com
*Counsel for Plaintiffs*

10

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this, the 2nd day of January, 2025, I served a true and accurate copy of the foregoing **MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** upon all counsel of record by using the Odyssey e-file and serve feature, sending a copy of the same to all counsel of record via e-mail, and sending a copy via U.S. Mail, postage prepaid and addressed as follows:

Terence Steed
Special Deputy Attorney General
N.C. Department of Justice
Post Office Box 629
Raleigh, NC 27602
Tsteed@ncdoj.gov

Mary Carla Babb
Special Deputy Attorney General
N.C. Department of Justice
Post Office Box 629
Raleigh, NC 27602
MCBabb@ncdoj.gov

*Counsel for Defendants*

/s/ Phillip J. Strach
Phillip J. Strach

# **Exhibit 2**

# Jordan Koonts

**From:** Jordan Koonts
**Sent:** Thursday, January 2, 2025 3:12 PM
**To:** Myers, Kellie Z.
**Cc:** Phil Strach; Steed, Terence; Babb, Mary Carla (Hollis)
**Subject:** FW: 24CV041789-910 - Plaintiffs' Motion for Temporary Restraining Order - Emergency Calendar Request for Next Available Superior Court Session
**Attachments:** (24CV041789-910) Kivett, et al. v. NCSBE - Voter Reg Form Mot for TRO and PI.pdf; 24CV041789-910 (Wake CVS 01).pdf

**Importance:** High

Good afternoon, Ms. Myers,
My apologies, but I realized that I left you off the initial email requesting an emergency motions setting. Please see Plaintiffs' request for the next available setting (including tomorrow, 1/3/25 if available), below.

Thank you,
Jordan



**JORDAN KOONTS** ASSOCIATE
jordan.koonts@nelsonmullins.com
301 HILLSBOROUGH STREET | SUITE 1400
RALEIGH, NC 27603
T 919.329.3802   F 919.329.3799
NELSONMULLINS.COM   VCARD   VIEW BIO

**From:** Jordan Koonts
**Sent:** Thursday, January 2, 2025 3:09 PM
**To:** Turner, Amy L. <amy.l.turner@nccourts.org>; Tucker, Lisa R. <lisa.r.tucker@nccourts.org>; Wake.SCJ.Calendar Requests <calendarrequestswake@nccourts.org>
**Cc:** Phil Strach <phil.strach@nelsonmullins.com>; Steed, Terence <Tsteed@ncdoj.gov>; Babb, Mary Carla (Hollis) <MCBabb@ncdoj.gov>
**Subject:** 24CV041789-910 - Plaintiffs' Motion for Temporary Restraining Order - Emergency Calendar Request for Next Available Superior Court Session
**Importance:** High

Good afternoon,
Attached please find an as-filed copy of Plaintiffs' Emergency Motion for Temporary Restraining Order and Preliminary Injunction in the matter of *Kivett, et al. v. NCSBE, et al.* (24CV041789-910). Counsel for the North Carolina State Board of Elections is copied on this email.

The motion was just filed via e-courts (envelope number #1762579). Additionally, I have attached a calendar request seeking a hearing for the next available superior court session. If there is availability tomorrow (1/3/2025), then Plaintiffs request placement on the calendar for that session. Otherwise, Plaintiffs are available any day next week.

Thank you,
Jordan



**JORDAN KOONTS** ASSOCIATE
jordan.koonts@nelsonmullins.com
**301 HILLSBOROUGH STREET | SUITE 1400**
**RALEIGH, NC 27603**
T 919.329.3802  F 919.329.3799
**NELSONMULLINS.COM**  VCARD  **VIEW BIO**

# Exhibit 3

1    questions the Court has.  If there are no further

2    questions, I would just close with two points.

3                 First, again, I think you should exercise

4    both -- or either federal question jurisdiction, our

5    civil rights removal jurisdiction, over both of

6    plaintiffs' claims.

7                 I would also ask that if you are inclined to

8    enter a remand order, we, of course, do not believe you

9    should, but I would ask you to enter some sort of

10   reasonable stay of that order to allow the State Board

11   time to appeal, as the State Board has the right to

12   appeal because of 1447(d).

13                THE COURT:  All right.  Thank you, counsel.

14                MR. MOORE:  Thank you, Your Honor.

15                MR. WAXMAN:  Your Honor, I have just a few

16   points to add.

17                Obviously we agree with the State Board on

18   this issue.  We certainly agree with your tentative

19   views about count 1.  And I don't want to waste the

20   Court's time by quibbling with a few of the things that

21   you said or assume that I think are perhaps incorrect.

22                THE COURT:  Quibble away.  I want to get

23   this right, so if you think I'm getting something wrong,

24   tell me.

25                MR. WAXMAN:  Well, number one:  Although I