No. 25-1021

# In the United States Court of Appeals for the Fourth Circuit

TELIA KIVETT, ET AL.,
*Plaintiffs-Appellees*

v.

NORTH CAROLINA STATE BOARD OF ELECTIONS, ET AL.,
*Defendants-Appellants*

———————————————

From the United States District Court
for the Eastern District of North Carolina
The Honorable Richard E. Myers II (No. 5:25-CV-00003)

———————————————

**BRIEF OF PLAINTIFFS-APPELLEES**

———————————————

PHILLIP J. STRACH
JORDAN A. KOONTS
**NELSON MULLINS RILEY &
SCARBOROUGH LLP**
301 HILLSBOROUGH ST., SUITE 1400
RALEIGH, NORTH CAROLINA 27603
PH: (919) 329-3800
PHIL.STRACH@NELSONMULLINS.COM
JORDAN.KOONTS@NELSONMULLINS.COM

*COUNSEL FOR PLAINTIFFS-APPELLEES*

TABLE OF CONTENTS

Table of Authorities................................................................. iii

Introduction ............................................................................1

Statement of Jurisdiction.........................................................3

Issues Presented.......................................................................3

Statement of the Case ..............................................................4

   I.   The North Carolina Constitution Establishes Certain
Prerequisites to Determine Who May Vote in its Elections............4

   II.  The State Board Fails to Comply With State Law Procedures in
Conducting the November 5, 2024 General Election for State
Offices. ..................................................................................7

   III. Plaintiffs Seek Judicial Relief in State Court Requiring the State
Board to Adhere to These State Law Procedures...........................9

   IV. Plaintiffs File an Emergency Motion to Remand and the District
Court Remands the Matter. ....................................................10

   V.  Post-Remand, Plaintiffs Proceed Expeditiously Through State
Court ....................................................................................11

Summary of the Argument ....................................................12

Standard of Review ...............................................................18

Argument...............................................................................19

   I.   This Court's Decision in *Griffin* Does Not Control.......................19

   II.  The District Court Did Not Abuse Its Discretion In Abstaining
From and Remanding This Matter Under *Burford*.......................24

     a.  *Burford* abstention was properly applied. ...................................25

   III. The District Court Lacked Removal Jurisdiction..........................36

     a.  Section 1441's narrow grounds are inapplicable as the State
Board fails to satisfy the *Gunn-Grable* framework....................37

     b.  Removal under section 1443(2) is unsupported .........................45

   IV. The State Board's Requested Relief Is Untenable and
Unsupported. ........................................................................48

Conclusion ............................................................................49

Certificates of Compliance ....................................................51

Certificate of Service .............................................................52

TABLE OF AUTHORITIES

CASES                                                                PAGE(S)

*American Airlines, Inc. v. Sabre, Inc.*,
  694 F.3d 539 (5th Cir. 2012).................................................40

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
  570 U.S. 1 (2013).................................................................33

*Ass'n of Cmty. Organizations for Reform Now v. Miller*,
  129 F.3d 833 (6th Cir. 1997)................................................42

*B & B Hardware, Inc. v. Hargis Indus., Inc.*,
  575 U.S. 138 (2015)............................................................24

*Beals v. VA Coal. for Immigrant Rts.*,
  2024 WL 4608863 (U.S. Oct. 30, 2024)........................................17, 46

*Broyles v. Texas*,
  618 F. Supp. 2d 661 (S.D. Tex. 2009) ...................................16

*Burford v. Sun Oil Co.*,
  319 U.S. 315 (1943)...........................................................1, 25

*Burrell v. Bayer Corp.*,
  918 F.3d 372 (4th Cir. 2019)........................................23, 38, 44

*Burt v. Titlow*,
  571 U.S. 12 (2013)............................................................1, 42

*Caterpillar Inc. v. Williams*,
  482 U.S. 386 (1987)..........................................................39

*Chase Brexton Health Servs., Inc. v. Maryland*,
  411 F.3d 457 (4th Cir. 2005)..............................................36

*Christianson v. Colt Indus. Operating Corp.*,
  486 U.S. 800 (1988)..........................................................38

*City of Martinsville, Virginia v. Express Scripts, Inc.*,
  128 F.4th 265 (4th Cir. 2025) ..................................2, 18, 49

*Clingman v. Beaver*,
  544 U.S. 581 (2005)..........................................................45

*Collins v. Pond Creek Mining Co.*,
  468 F.3d 213 (4th Cir. 2006)...............................................21

*Columbus Emergency Grp., LLC v. Blue Cross & Blue Shield of N.
Carolina*,
  2024 WL 1342764 (E.D.N.C. Mar. 29, 2024)......................................44

*Common Cause v. Lewis*,
  358 F. Supp. 3d 505 (E.D.N.C. 2019) ...................................39

*Dixon v. Coburg Dairy, Inc.*,
369 F.3d 811 (4th Cir. 2004).................................................................39

*Edmonson v. Eagle Nat'l Bank*,
922 F.3d 535 (4th Cir. 2019).................................................................20

*Empire Healthchoice Insurance, Inc. v. McVeigh*,
547 U.S. 677 (2006).................................................................44

*First Penn-Pac. Life Ins. Co. v. Evans*,
304 F.3d 345 (4th Cir. 2002).........................................19, 24, 25, 27

*Flying Pigs, LLC v. RRAJ Franchising, LLC*,
757 F.3d 177 (4th Cir. 2014).................................................................39

*Forty Six Hundred LLC v. Cadence Educ., LLC*,
15 F.4th 70 (1st Cir. 2021).................................................................48, 49

*Gasperini v. Center for Humanities, Inc.*,
518 U.S. 415 (1996).................................................................45

*Georgia v. Rachel*,
384 U.S. 780 (1966).................................................................46

*Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*,
545 U.S. 308 (2005).................................................................38

*Greenberg v. Veteran*,
889 F.2d 418 (2d Cir. 1989).................................................................34

*Gunn v. Minton*,
568 U.S. 251 (2013).................................................................10, 15, 38

*Hall v. United States*,
44 F.4th 218 (4th Cir. 2022).................................................................19

*Harper v. Pub. Serv. Comm'n*,
396 F.3d 348 (4th Cir. 2005).................................................................18

*Harrison v. NAACP*,
360 U.S. 167 (1959).................................................................36

*Hentosh v. Old Dominion Univ.*,
767 F.3d 413 (4th Cir. 2014).................................................................19

*Jamison v. Wiley*,
14 F.3d 222 (4th Cir. 1994).................................................................35

*Johnson v. Collins Entertainment Co., Inc.*,
199 F.3d 710 (1999).................................................................26, 27, 30

*Kolibash v. Comm. on Legal Ethics of W. Va. Bar*,
872 F.2d 571 (4th Cir. 1989).................................................................34, 35

iv

*Libertarian Party of Virginia v. Alcorn*,
  826 F.3d 708 (4th Cir. 2016)..........................................................31, 41
*Martin v. Stewart*,
  499 F.3d 360 (2007)...........................................................27, 28, 31
*Mayor & City Council of Baltimore v. BP P.L.C.*,
  388 F. Supp. 3d 538 (D. Md. 2019).........................................42
*Mazo v. New Jersey Sec'y of State*,
  54 F.4th 124 (3d Cir. 2022)......................................................41
*Merrell Dow Pharms. Inc. v. Thompson*,
  478 U.S. 804 (1986).................................................................40
*Mulcahey v. Columbia Organic Chems. Co.*,
  29 F.3d 148 (4th Cir. 1994).....................................................19
*Mullins v. Dominion Energy S.C., Inc.*,
  2022 WL 1498293 (D.S.C. May 12, 2022)................................43
*Nash County Board of Education v. The Biltmore Company*,
  640 F.2d 484 (4th Cir.1981)....................................................24
*New Orleans Public Service, Inc. v. Council of City of New Orleans*,
  491 U.S. 350 (1989)...........................................................14, 26
*RNC v. North Carolina State Bd. of Elections*,
  120 F.4th 390 (4th Cir. 2024) ..................................15, 16, 46
*Oregon v. Mitchell*,
  400 U.S. 112 (1970)...........................................................1, 32, 41
*Pennhurst State Sch. & Hosp. v. Halderman*,
  465 U.S. 89 (1984)...................................................................45
*Pinney v. Nokia, Inc.*,
  402 F.3d 430 (4th Cir. 2005)...................................................23
*Pittston Co. v. United States*,
  199 F.3d 694 (4th Cir. 1999)...................................................34
*Pressl v. Appalachian Power Co.*,
  842 F.3d 299 (4th Cir. 2016)...................................................43
*Quackenbush v. Allstate Ins. Co.*,
  517 U.S. 706 (1996)........................................................Passim
*R.R. Comm'n of Tex. v. Pullman Co.*,
  312 U.S. 496, 85 L. Ed. 971 (1941) .......................................20
*Republican Nat'l Comm. v. Wetzel*,
  120 F.4th 200 (5th Cir. 2024) .................................................33
*Ripley v. Foster Wheeler LLC*,
  841 F.3d 207 (4th Cir. 2016)...................................................19

*Rivet v. Regions Bank of Louisiana*,
  522 U.S. 470 (1998) ................................................................41
*Saimplice v. Ocwen Loan Servicing Inc.*,
  368 F. Supp. 3d 858 (E.D.N.C. 2019) ....................................24
*Sugarman v. Dougall*,
  , 413 U.S. 634, 647 (1973) ......................................................41
*United States v. Hammond*,
  912 F.3d 658 (4th Cir. 2019) ..................................................20
*United States v. Horsley*,
  105 F.4th 193 (4th Cir. 2024) .................................................34
*United States v. Marshall*,
  872 F.3d 213 (4th Cir. 2017) ..................................................13
*Virginia Coal. for Immigrant Rts. v. Beals*,
  2024 WL 4601052 (4th Cir. Oct. 27, 2024) ...........................17
*Vlaming v. West Point School Board*,
  10 F.4th 300 (4th Cir. 2021) .........................................40, 45
*Wise v. Circosta*,
  978 F.3d 93 (4th Cir. 2020) ...................................15, 34, 36

**CONSTITUTION**
N.C. Const. art. VI, § 3 ...............................................................4, 25

**STATUTES**
28 U.S.C. § 1257 ..............................................................................50
28 U.S.C. § 1291 ..........................................................................3, 18
28 U.S.C. § 1442 ..............................................................................35
28 U.S.C. § 1443(2) ..................................................................Passim
28 U.S.C. § 1441 .......................................................15, 37, 38, 40
52 U.S.C. § 2901 ..............................................................................16
52 U.S.C. § 20507 ............................................................................17
52 U.S.C. § 21083 (a)(5)(A)(iii) ....................................................33

N.C.G.S. § 163-82.1 ...............................................................4, 7, 8
N.C.G.S. § 163-82.4 ................................................................Passim
N.C.G.S. § 164-82.4 ........................................................................41
N.C.G.S. § 163-166.12 ......................................................................8

## OTHER AUTHORITIES

*Beals v. VA Coal. for Immigrant Rts.*, Emergency Application to Stay,
   2024 WL 4605223 (S.Ct. Oct. 27, 2024)..........................................47, 48

Burford *Abstention and Judicial Policy Making*,
   88 NYU L. Rev. 763 ..............................................................................26

INTRODUCTION

As the Supreme Court has long recognized, principles of federalism and the framework of the Constitution itself leaves the conduct of state elections to the states. *See Oregon v. Mitchell*, 400 U.S. 112, 124-29 (1970). This case arises from the North Carolina State Board of Elections' ("State Board") failure to follow state voter registration cure processes in order to lawfully count certain ballots cast in elections for state office. Fundamentally, the application of state law and procedures control— including state constitutional and statutory issues of first impression. This fact alone renders federal intervention inappropriate. The State Board's invocation of federal defenses and purported barriers to relief does not change this equation, for "[s]tate courts are adequate forums for the vindication of federal rights." *Burt v. Titlow*, 571 U.S. 12, 19 (2013).

The district court properly recognized that its involvement in these complex and unsettled issues of state law would disrupt foundational tenets of federalism. In so recognizing, the district court abstained from further ruling under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), a case which affirms the sanctity of a state's ability to create, administer, and interpret its own statutory procedures. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 726-27 (1996). That is exactly what is at issue here.

1

Now, the State Board asks this Court to force the district court to resurrect jurisdiction and reinsert itself into the fray. The State Board offers no tenable basis for such relief—relief which the district court is independently powerless to grant. *See City of Martinsville, Virginia v. Express Scripts, Inc.*, 128 F.4th 265, 267-68 (4th Cir. 2025). Instead, the State Board relies upon this Court determining that its unpublished, *per curiam* decision in *Griffin v. N.C. State Bd. Of Elections*, No. 25-1018(L), Dkt. 132 at 11 (4th Cir. Feb. 4, 2025) controls. It does not. Although the State Board selects certain similarities between the allegations here and those in *Griffin*, they overlook the critical distinctions. Unlike *Griffin*, the claims here are wholly reliant upon state law administrative procedures: specifically, the statutory process for curing deficient registration forms in order to count affected ballots cast thereunder. This inquiry begins and ends with interpretations of state law, a distinction which forecloses the State Board's generalized arguments.

No party seriously disputes that the district court's decision to abstain was proper.[1] The State Board, however, takes issue with the form

---

[1] The State Board's core argument appears to be that abstention is appropriate but only if this Court treats this matter in lockstep with *Griffin*. If this Court declines that invitation then the State Board argues

2

of abstention, arguing that it should be modified in accordance with *Griffin*. But *Griffin* is not binding precedent, nor is its sparse, fact-specific reasoning persuasive on the unique claims presented.

Plaintiffs-Appellees ("Plaintiffs") respectfully request that this Court affirm the decision below.

## STATEMENT OF JURISDICTION

As explained further, *infra*, the district court lacked removal jurisdiction over the claims presented.

This Court has jurisdiction to review the district court's order abstaining from and remanding the matter pursuant to 28 U.S.C. § 1291. *See, e.g., Quackenbush*, 517 U.S. at 711-15.

## ISSUES PRESENTED

1.      Whether *Griffin* controls this appeal.

2.      Whether the district court abused its discretion in abstaining from deciding the matter under *Burford*.

3.      Whether the district court had removal jurisdiction.

---

that abstention is completely inappropriate. Not only are these positions contradictory, but both fail on their own merits.

3

STATEMENT OF THE CASE

I.   **The North Carolina Constitution Establishes Certain Prerequisites to Determine Who May Vote its Elections.**

Article VI, § 3 of the North Carolina Constitution expressly limits voting eligibility in the state's elections to those persons who are lawfully registered in the state, providing: "Every person offering to vote shall be at the time legally registered as a voter as herein prescribed and in the manner provided by law." N.C. Const. art. VI, § 3(1); JA13. The constitution further states that "The General Assembly shall enact general laws governing the registration of voters." *Id.*

Pursuant to this mandate, the General Assembly established a statutory scheme defining how a person may be lawfully registered to vote in North Carolina's state elections. JA19-23. First, N.C.G.S. § 163-82.1 echoes the constitution, stating that "No person shall be permitted to vote who has not been registered under the provisions of this Article or registered as previously provided by law." N.C.G.S. § 163-82.1(a). From there, the General Assembly delegates the authority to establish a statewide voter registration form to the State Board. *See id.* § 163-82.3; JA19. The state's voter registration form serves several defined purposes,

4

including changing party affiliation, changing addresses, reporting a change of name, and, of course, registering to vote. JA20.

The State Board's power to promulgate a statewide voter registration form is not without important guardrails. Specifically, the General Assembly enumerated eleven types of information which the registration form "shall" request. N.C.G.S. § 163-82.4(a). Of those required categories is the applicant's driver's license number or, if they do not have such a number, then the last four digits of their social security number. *Id.* § 163-82.4(a)(11). Only if the applicant supplies either number, or it is confirmed that the applicant has neither number, is the State Board then permitted to assign them a unique voter registration number. *Id.* §163-82.4(b); JA21. While the General Assembly designated certain categories of information which cannot form the basis for the registration form's denial if they are not provided, the driver's license or social security number requirement is not one of them. N.C.G.S. § 163-82.4(a) (listing race, ethnicity, gender, and telephone number as the sole bases which the absence of cannot result in the registration's denial); JA19-20. In short, the collection of a registrant's driver's license number or the last four digits of their social security

5

number is a non-negotiable prerequisite to registering someone to vote in North Carolina's state elections.

Although the State Board is required to collect the listed information on the front end, the General Assembly provided a failsafe procedure to ensure that deficient registration forms may be timely cured in order to be counted in a pending state election contest. N.C.G.S. § 163-82.4(f); JA22-23. However, this ability to potentially cure and count a ballot returned by such a voter is expressly preconditioned on the State Board and its county boards of election adhering to a strict set of statutory timelines and processes. *Id.* Specifically, N.C.G.S. § 163-82.4(f) provides:

> If the voter fails to complete any required item on the voter registration form but provides enough information on the form to enable the county board of elections to identify and contact the voter, *the voter shall be notified of the omission* and given the opportunity to complete the form at least by 5:00 P.M. on the day before the county canvass as set in G.S. 163-182.5(b). If the voter corrects that omission within that time and is determined by the county board of elections to be eligible to vote, the board shall permit the voter to vote. If the information is not corrected by election day, the voter shall be allowed to vote a provisional official ballot. If the correct information is provided to the county board of elections by at least 5:00 P.M. on the day before the county canvass, the board shall count any portion of the provisional official ballot that the voter is eligible to vote.

6

N.C.G.S. §163-82.4(f) (emphasis added). Here, the State Board refused to comply with this statutorily mandated procedure.

## II.  The State Board Fails to Comply With State Law Procedures in Conducting the November 5, 2024 General Election for State Offices.

For close to a decade the State Board used a statewide voter registration form which failed to make clear that the applicant was required to provide their driver's license or social security number at the time of registration. JA23-24. As a result, approximately 225,000 people were registered to vote in North Carolina despite failing to provide this statutorily required information. *Id.* According to state law, these registration forms were deficient from the outset and should have never been accepted until the complete information was solicited and received. JA23-25; N.C.G.S. § 163-82.1(a). The State Board only recognized and corrected this error going forward after a concerned citizen brought it to their attention. JA23-24. However, the State Board repeatedly refused to correct the existing errors when it refused to contact any affected registrants in compliance with the state's statutory cure procedure, despite ample time to do so. *Id.*

The State Board reasoned its refusal on the notion that a person with a missing driver's license or social security number would still have to show some form of identification at the polls by virtue of North Carolina's voter identification statute—N.C.G.S. §163-166.12. JA24. In the State Board's view, providing an acceptable identification at the polls, regardless of the form, would cure the deficiencies in the person's registration. *Id*. This position, while unsupported by any statutory authority, also proved to be patently false. JA24-25. At least 60,000 people voted in the November 5, 2024 general election contests for state and local offices despite failing to provide the information required by N.C.G.S. § 163-82.4(a)(11) at the time of registration. JA24-25. Compounding the problem, to the extent a photo identification was shown at the polls—instead of some other form of identification such as a utility bill, *see* N.C.G.S. §163-166.12—the State Board's own records reveal that the missing information was not recorded. JA24-25.

The State Board had every opportunity to comply with the cure procedures set forth in N.C.G.S. § 163-82.4(f), yet they failed to do so. JA25. The deadline for county canvasses has passed, and the State Board indisputably failed to act. *Id*. The State Board's intentional refusal to

8

follow the procedures required by state law is wholly unsupported. As a result, the November 5, 2024 general election contest results for state offices have been marked with the prospect of potentially unlawful votes, implicating a host of concerns under state law, each demanding immediate redress from a state court.

### III. Plaintiffs Seek Judicial Relief in State Court Requiring the State Board to Adhere to These State Law Procedures.

Plaintiffs filed suit in Wake County Superior Court on December 31, 2024. JA12-26. On January 2, 2025, Plaintiffs filed a motion for a temporary restraining order and injunctive relief seeking, among other things, an order commanding the State Board to comply with the statutory processes set forth in N.C.G.S. § 163-82.4(f). *See Kivett, et al. v. NCSBE, et al.*, 24cv041789-910, at D.E. 11 (Wake Super. Ct. Jan. 2, 2025). In the alternative, Plaintiffs asked for the immediate implementation of a judicial process mirroring that which N.C.G.S. § 163-82.4(f) dictated the State Board follow in the first instance. *Id*. That same day, Plaintiffs requested an emergency setting before the state trial court. Before the request could be granted or Plaintiffs' motion heard, the State Board removed the matter to federal court on January 2, 2025. JA7-10.

## IV.    Plaintiffs File an Emergency Motion to Remand and the District Court Remands the Matter.

On January 3, 2025, Plaintiffs filed an emergency motion to remand the matter to state court. JA5. In their motion, Plaintiffs argued that the district court lacked removal jurisdiction under any of the bases the State Board asserted. *See Kivett, et. al. v. NCSBE, et al.*, 5:25-cv-00003-M-BM, at D.E. 17-18 (E.D.N.C. 2025). Specifically, Plaintiffs asserted that, due to the nature of the claims and allegations presented, the State Board could not establish the prerequisite factors of *Gunn v. Minton*, 568 U.S. 251 (2013). Similarly, Plaintiffs argued that 28 U.S.C. § 1443(2) was an inappropriate grounds for removal because the State Board could not identify any colorable refusal to act under an applicable federal law. Further, Plaintiffs asserted that the State Board waived its arguments relating to any alleged refusal to act pursuant to the NVRA's ninety-day quiet period because it repeatedly refused to act well before the period would have come into effect. Plaintiffs also highlighted the State Board's inconsistent prior rationale for refusing to act, further undercutting the veracity of the section 1443(2) arguments.

On January 6, 2025, the district court entered an order remanding the matter to state court. JA37. In so remanding, the district court

10

adopted the same rationale it used to support its decision in *Griffin Id*.
The same day it issued its remand order, the district court transmitted
the letter of remand to the Wake County Superior Court. JA38. Later
that day the State Board filed its notice of appeal from the district court's
order. JA39-40.

## V. Post-Remand, Plaintiffs Proceed Expeditiously Through State Court

After the district court remanded the matter and issued its letter to
the Wake County Superior Court, Plaintiffs sought and received a
hearing on their motion for a temporary restraining order and for
injunctive relief. In a single-page order, the Wake County Superior Court
denied Plaintiffs' motion. *Kivett*, 24cv041789-910, at D.E. 20. Plaintiffs
then timely sought appellate review in the North Carolina Court of
Appeals. *Id.* at D.E. 21. However, the North Carolina Court of Appeals
stayed the matter upon the State Board's request, which itself was
premised upon the notion that either this Court in *Griffin* or the North
Carolina Supreme Court in *Griffin v. NCSBE, et al.*, 320P24-2 (N.C.
2024) would clarify or resolve the issues presented. *Kivett, et al. v.
NCSBE, et al.*, P25-30, at D.E. 5 (N.C. Ct. App. 2025). On January 22,
2025, the North Carolina Supreme Court dismissed the petition in

*Griffin*, 320P24-2, and on February 4, 2025, this Court issued its opinion in *Griffin*. Because neither action resolved the issues presented, Plaintiffs timely petitioned the North Carolina Supreme Court to either lift the North Carolina Court of Appeals' stay, or independently assume jurisdiction over the appeal. *Kivett, et al. v. NCSBE, et al.*, 51P25 (N.C. Sup. Ct. 2025). That petition remains pending.

## SUMMARY OF THE ARGUMENT

The district court's abstention under *Burford* was sound as applied to these facts and should be affirmed.

**1.** *Griffin* does not control this appeal. The State Board's arguments primarily rely on this Court agreeing that certain factual similarities shared between the events giving rise to *Griffin* and those of the present dispute are enough to make the matters rise and fall together. Not only was *Griffin* an unpublished opinion, but its reasoning is far from persuasive, or even instructive. It is well-settled that unpublished opinions are not precedent in this Circuit, and instead, must be analyzed for the persuasiveness of their reasoning. *See, e.g., United States v. Marshall*, 872 F.3d 213, 224 n.15 (4th Cir. 2017). *Griffin*'s analysis of the applicability of *Burford* was minimal, and its outcome was

intensely fact-specific. These distinctions warrant an independent analysis of the district court's appropriate exercise of discretion in applying *Burford* on the unique claims presented.

**2.** The district court did not abuse its discretion when it abstained under *Burford*. The State Board's arguments conflate this matter and *Griffin* while ignoring their significant differences. The nature of these distinctions—i.e., the specific allegations and claims for relief directly relating to North Carolina statutory procedures for curing deficient voter registrations—results in the district court's abstention rationale carrying even more force here than it did in *Griffin*.

**a.** To the extent *Griffin*'s rationale carries weight, it is instructive as to why the district court's chosen method of abstention was appropriate. All parties agree that *Burford* abstention is properly invoked when a federal court refrains from interfering with unsettled issues of state law which would disrupt a state's efforts to create a "coherent policy with respect to a matter of substantial public concern." *Quackenbush*, 517 U.S. at 726-27. North Carolina's uniform policy for ensuring processing and curing proper registrations for persons casting ballots in its state election contests is undoubtedly a matter of

13

substantial public concern. The procedures by which the North Carolina legislature has determined deficient registrations should be cured so ballots cast by the registrant may count for a state election contest is purely a question of state policy. Thus, the allegations presented strike at *Burford*'s heartland.

**b.**      Contrary to the State Board's assertions, unsettled questions of state law predominate this case. Indeed, no court has ever interpreted the state statutory procedures at issue, including in the manner complained of. Whether the State Board's failure to follow these procedures harmed Plaintiffs and their state constitutional rights is a quintessential question of state law. *Burford* exists to avoid federal courts wading into such questions, particularly where, as here, they are matters of first impression. *See New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989). Intervention from a federal court would only disrupt the state's efforts to implement and administer these procedures.

**c.**      Requiring the district court to modify its order abstaining from further ruling is inappropriate, especially as the district court plainly did not abuse its discretion in selecting its manner of abstention.

Because the State Board apparently agrees that *some* form of abstention was appropriate, the judgment below should be affirmed. The State Board's argument that abstention is *per se* inappropriate in any voting-rights cases or where a party invokes 28 U.S.C. § 1443(2) is unsupported and contrary to precedent. *See Wise v. Circosta*, 978 F.3d 93, 100-03 (4th Cir. 2020); *see also Quackenbush*, 517 U.S. at 718.

    **3.**    The district court lacked removal jurisdiction under 28 U.S.C. §§ 1441 and 1443(2). Regarding section 1441, the State Board cannot establish the prerequisite factors of *Gunn v. Minton*, 568 U.S. 251 (2013), largely because this is an issue purely of state law and state procedures relating to state election contests. Contrary to the State Board's assertions, *RNC v. North Carolina State Bd. of Elections*, 120 F.4th 390 (4th Cir. 2024), does not control. Unlike in *RNC*, there are no federal claims inseparably interwoven with the well-pleaded complaint. 120 F.4th at 401. North Carolina's courts are fully competent to resolve the federal defenses the State Board raises in support of removal.

    Concerning removal under 28 U.S.C. § 1443(2), Plaintiffs' claims do not contain an "embedded federal question," nor can the State Board identify any requested action which they refused to do on the basis of a

15

perceived inconsistency with "a law providing for equal rights." *See id*. Plaintiffs' claims are wholly focused on state law and state procedures, as are the contests which are implicated thereby. The federal statutes which the State Board vaguely cites in support of removal are indisputably inapplicable to state election contests. *See generally* 52 U.S.C. § 2901 *et seq*. (stating that the purpose of Help America Vote Act (HAVA) is to "assist in the administration of <u>Federal</u> elections and to otherwise provide assistance with the administration of <u>Federal election laws and programs</u>[.]") (emphasis added); § 21081 (outlining the requirements for voting systems used in elections for federal office); *see also, e.g., Broyles v. Texas*, 618 F. Supp. 2d 661 (S.D. Tex. 2009), *aff'd*, 381 F. App'x 370 (5th Cir. 2010) (noting that courts who have confronted the issue have held that HAVA "does not apply to state or municipal registration or ballot questions without a federal component.").

Additionally, the State Board's identified provisions of the National Voter Registration Act, 52 U.S.C. § 20507 *et seq*. (NVRA) are an inapplicable basis for any purported refusal to act, because unlawfully registered persons are not within the statute's scope. *Compare Virginia Coal. for Immigrant Rts. v. Beals*, No. 24-2071, 2024 WL 4601052, at *1-

16

2 (4th Cir. Oct. 27, 2024) (declining to adopt state's argument that a person who is not qualified to vote in the first instance cannot be covered by the NVRA's quiet provision) *with Beals v. VA Coal. for Immigrant Rts.*, No. 24A407, 2024 WL 4608863 (U.S. Oct. 30, 2024) (granting emergency stay and allowing the state to remove non-citizens from its voter rolls). Furthermore, the State Board has effectively waived this argument by refusing to act well before the NVRA's ninety-day quiet period became relevant.

    **4.**    Even if the State Board were correct in its reading of *Griffin,* they do not provide a cognizable basis for the district court to resurrect jurisdiction. Since this appeal was filed, the underlying matter has proceeded expeditiously through state court, moving from the trial court, through the North Carolina Court of Appeals, and into the State Supreme Court, where it currently sits and where the State Board has filed responsive papers. Thus, not only can the State Board point to no precedent enabling the district court to act in the manner they seek,[2] but

---

[2] Indeed, just this term, this Court recognized that either the timely issuance of a letter of remand or a notice of appeal, whichever occurs first, is the moment at which a district court is divested of jurisdiction to act further. *See Express Scripts, Inc.*, 128 F.4th at 267-68. Here, unlike in *Express Scripts*, the letter of remand issued prior to the notice of appeal

doing so would be an affront to North Carolina's courts' sovereign prerogative to address cases properly before them. This too renders the State Board's requested relief unsound.

## STANDARD OF REVIEW

A district court's decision to abstain from exercising jurisdiction is reviewed for an abuse of discretion. *Harper v. Pub. Serv. Comm'n*, 396 F.3d 348, 357–58 (4th Cir. 2005). As this Court stated in *First Penn-Pac. Life Ins. Co. v. Evans*,

> We may not disturb a district court's decision to abstain under *Burford* unless we find an abuse of discretion. That standard is a deferential one. A district court ruling may be a permissible exercise of discretion, even if an appellate court suspects that it might have ruled otherwise in the first instance.

304 F.3d 345, 348 (4th Cir. 2002) (internal citations omitted).

Issues of subject matter jurisdiction, including removal, are reviewed de novo. *Ripley v. Foster Wheeler LLC*, 841 F.3d 207, 209 (4th Cir. 2016). "Because removal jurisdiction raises significant federalism

---

being filed. While Plaintiffs do not contest that this Court has jurisdiction to review the district court's order under 28 U.S.C. § 1291, the fact that the district court lacks jurisdiction to independently grant the relief sought is illustrative of how untenable the State Board's requested remedy is here. As explained further *infra*, the State Board's request is, at its core, premised upon a hope of cooperation between the district court and state courts, wherever this case may be at the time of issuance.

concerns, we must strictly construe removal jurisdiction." *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). If there is any doubt as to jurisdiction, then "a remand is necessary." *Id.*

ARGUMENT

## I.  This Court's Decision in *Griffin* Does Not Control.

The unpublished *per curiam* decision in *Griffin* is, by its definition, not binding precedent. *Hall v. United States*, 44 F.4th 218, 233 n.11 (4th Cir. 2022). As this Court has repeatedly explained, "ordinarily, unpublished opinions are not accorded precedential value but . . . 'are entitled only to the weight they generate by the persuasiveness of their reasoning.'" *Hentosh v. Old Dominion Univ.*, 767 F.3d 413, 417 (4th Cir. 2014) (citations omitted). Thus, in order to examine the State Board's arguments that *Griffin* controls the outcome of this appeal, one must begin with its reasoning. *See United States v. Hammond*, 912 F.3d 658, 662 (4th Cir. 2019) (counseling an independent review of the underlying statutes at issue to determine the persuasive weight of an unpublished opinion dealing with similar facts).

The opinion in *Griffin* consisted of little more than seven pages comprising procedural history, background synopses, and ultimately a

conclusion that the district court's remand order should be modified to reflect a different form of abstention. In reaching this conclusion, the *Griffin* opinion was sparse in its reasoning. In fact, the *Griffin* opinion did not substantively analyze the applicability of *Burford* abstention whatsoever, instead electing to discuss the suitability of *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 85 L. Ed. 971 (1941), on the facts presented. A reading of *Griffin* reveals that it provides nothing which persuasively reasons why *Burford* abstention was not appropriate there. It certainly does not contain any such reasoning as to why *Burford* abstention should not apply here. *See Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 546 n.4 (4th Cir. 2019) (declining to follow an unpublished *per curiam* decision that was "sparsely reasoned").

Relatedly, *Griffin* had significant substantive and procedural differences than this matter. First, *Griffin* confronted the question of whether an extraordinary writ to the North Carolina Supreme Court was an "original action" within the scope of relevant removal statutes. That question is absent here. Second, *Griffin* had three core claims, two of which are indisputably not at issue. The one claim the State Board points to in drawing similarities between this matter and *Griffin*—allegations

20

relating to the State Board's failures to properly register persons in advance of the November 5, 2024 state election contest—significantly diverge from each other. More specifically, *Griffin* did not contain the same allegations and claims for relief relating to the implementation of a cure process mirroring that which the State Board failed to follow under N.C.G.S. § 163-82.4(f). Thus, even if the *Griffin* opinion could be read as persuasively analyzing the application of *Burford* on the claims presented there, it could not logically extend those claims which were absent from *Griffin*'s underlying complaint. *See Collins v. Pond Creek Mining Co.,* 468 F.3d 213, 219 (4th Cir. 2006).

Although the State Board asserts that the allegations here are "identical in every material respect," to those in *Griffin*, they conveniently ignore the significant distinctions between the matters. Plaintiffs do not dispute that many of their allegations stem from the State Board's same unjustifiable failures to contact persons with statutorily deficient registrations and correct those registrations prior to the November 5, 2024 general election. Numerous parties across various matters have raised complaints relating to the State Board's actions, beginning in October 2023 and many times thereafter. That other parties

21

complain of the same unlawful actions does not wed the outcomes of these separate cases together. Although it is unsurprising that the contest in *Griffin*, as one for a state office, falls within the scope of the relief sought here, it is not dispositive of this matter's outcome.

Where this matter and *Griffin* primarily diverge is in their claims for relief. *Griffin* sought the outright removal of these voters from the election count for the sole contest at issue, Seat 6 Associate Justice of the North Carolina Supreme Court. In contrast, Plaintiffs ask for the implementation of a judicial process akin to that which the State Board should have complied with in the first place under N.C.G.S. § 163-82.4(f). Plaintiffs also assert unique state constitutional claims which are not found in *Griffin*. As discussed *infra*, these claims, especially those concerning the state law process for curing deficient registrations, are what make the district court's chosen abstention uniquely proper.

Although the State Board claims that by virtue of its issuance of certificates of election to all state contests except the one at issue in *Griffin* then Plaintiffs must only be challenging the same contest for state supreme court, this argument fails several times over. First, the State Board's argument ignores Plaintiffs' well-pleaded complaint, and this

Court has routinely held that the face of the well-pleaded complaint is the litmus test for judging whether removal was proper. *See Pinney v. Nokia, Inc.*, 402 F.3d 430, 442 (4th Cir. 2005). Second, in state court, Plaintiffs raised arguments relating to certain North Carolina statutes which permit the reopening of and challenges to unlawful state office holders in limited circumstances. *See* N.C.G.S. §§ 1-515 and 516. Thus, not only is the State Board's interpretation of the effect of a certificate election far from unassailable, but it is at most, a defense. *See Burrell v. Bayer Corp.*, 918 F.3d 372, 380, 381-82 (4th Cir. 2019) (defenses are not a proper ground for removal). The State Board's attempt to shoehorn this matter's much broader scope of relief into the narrow circumstances of *Griffin* such that the outcome of the latter dictates the former, finds no basis in precedent. Nothing about *Griffin* satisfies any manner of preclusion, especially between cases with separate parties, claims, and legal theories. *See, e.g., Nash County Board of Education v. The Biltmore Company*, 640 F.2d 484, at 486 (4th Cir.1981); *see also B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 148 (2015); *Saimplice v. Ocwen Loan Servicing Inc.*, 368 F. Supp. 3d 858, 865-66 (E.D.N.C. 2019).

23

This Court regularly finds unpublished opinions to be unpersuasive when a separate disputes underlying facts and allegations are sufficiently distinguishable. Even assuming that *Griffin* contained sufficient reasoning to guide future cases, the distinguishable nature of the allegations here warrants an independent review of the district court's abstention rationale.

## II. The District Court Did Not Abuse Its Discretion In Abstaining From and Remanding This Matter Under *Burford*.

Coupling the deference afforded to a district court's decision to abstain, *see First Penn-Pac. Life Ins.*, 304 F.3d at 348, along with the specific claims alleged, the district court's application of *Burford* was uniquely appropriate. Plaintiffs' claims turn entirely on the interpretation of a specific state law cure process for deficient registrations and ballots cast thereunder. The implementation of this procedure was a policy choice by the North Carolina legislature made in furtherance of the North Carolina Constitution's mandate that only registered persons may vote in the state's elections. *See* N.C. Const. art. VI § 3. These fundamental questions of state law, policy, and procedure,

24

all reaffirm the district court's well-reasoned application of *Burford* on the facts presented.

### a. *Burford* abstention was properly applied.

In *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), the Supreme Court articulated the principle that even if a federal court has jurisdiction over a proceeding, it "may, in its sound discretion . . . refuse to enforce or protect legal rights the exercise of which may be prejudicial to the public interest" because it is in the public interest that "federal courts of equity should exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy." *Id.* at 317–18. This Court has observed that *Burford* may apply "even in the absence of a state administrative proceeding." *First Penn-Pacific Life Ins. Co.*, 304 F.3d at 351 n.3.

Subsequent opinions from the Supreme Court have funneled these general principles from *Burford* into a more concrete analytical framework. In *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350 (1989), the Supreme Court explained that, since it was first decided, the "*Burford* doctrine" has been distilled down to the principle that a federal court *must* "decline to interfere with [state]

25

proceedings [ ]" when either of two situations are present: "(1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Id.* at 361 (internal quotation marks omitted).

This Court has been particularly sensitive to federalism concerns in its application of the *Burford* doctrine. *See generally,* Kade N. Olsen, Note, *Burford Abstention and Judicial Policy Making*, 88 NYU L. Rev. 763, 774–775. For instance, in *Johnson v. Collins Entertainment Co., Inc.*, 199 F.3d 710 (1999), this Court characterized *Burford* abstention as a balancing test requiring "assess[ment] [of] the interest in having federal rights adjudicated in federal court against state interests in the control of state regulatory programs." *Id.* at 723. The *Johnson* court noted that "the state system does possess greater competence than the federal courts to decide questions of law impacting state public policy, especially where state courts can fully vindicate any federal interest that may arise"

26

and, thus, "*[t]he adequacy of state court review diminishes plaintiffs'
interest in a federal forum.*" *Id.* (citations omitted) (emphasis added).

Several years after deciding *Johnson*, this Court reaffirmed its
emphasis on the federalism concerns at the heart *Burford* abstention. In
*First Penn-Pacific Life Ins. Co.*, this Court emphasized that the "general
concern" informing a *Burford* abstention question is "careful
consideration of the federal interests in retaining jurisdiction and the
competing concern for 'independence of state action,' that the State's
interests are paramount and the dispute would best be adjudicated in a
state forum." 304 F.3d at 348 (quoting *Quackenbush*, 517 U.S. at 728)
(internal citation omitted).

Finally, in *Martin v. Stewart*, 499 F.3d 360 (2007), this Court once
again emphasized the broad federalism concerns inherent in the *Burford*
abstention doctrine by noting that, while there is a strict duty to exercise
jurisdiction as it is conferred on federal courts by Congress, *Burford*
stands for the principle that a court may abstain from exercising that
jurisdiction "when the importance of difficult questions of state law or the
state's interest in uniform regulation outweighs the federal interest in
adjudicating the case at bar." *Martin*, 499 F.3d at 365.

27

Both situations where *Burford* abstention is appropriate are present. As such, the district court did not abuse its discretion in abstaining in the chosen manner, and its judgment should be affirmed.

### i. Plaintiffs' claims are wholly dependent upon North Carolina's registration and cure procedures for state election contests, bringing this matter squarely within *Burford*'s scope.

Difficult questions of state law undoubtedly predominate this dispute. The resolution of these questions—i.e., what relief duly registered North Carolina voters and political organizations may seek when the state entity charged with ensuring proper voter registration in accordance with state law fails to do so—is of significant public importance. Indeed, the impact of the answer to this question will transcend all future state office elections in North Carolina.

As established *supra*, Plaintiffs allege that the State Board utilized an improper voter registration form which failed to collect certain information required by state law. JA23-25. The State Board then accepted deficient registration forms (namely, those missing either a driver's license or social security number) and allowed ballots to be cast thereunder. Upon receipt of such a deficient form, the State Board should have immediately instructed its county boards to undergo the procedural

cure process set forth in N.C.G.S. § 163-82.4(f) to ensure any ballots cast by these registrants could count in time for the post-election county canvasses. JA22-23. Instead, the State Board repeatedly refused to follow this process, beginning almost a year prior to the November 5, 2024 state office general election.[3] JA23-25. As a result of this intentional inaction, Plaintiffs contend that potentially unlawful votes were cast in the state office contests of the November 5, 2024 election. JA24-25. In order to protect against such harm, Plaintiffs sought, among other things, a judicial process akin to the cure process the State Board should have followed in the first instance. JA33-34.

The issues presented by Plaintiffs' complaint are novel and far from settled. The North Carolina legislature made a policy choice in defining the exact process by which a person may be lawfully registered pursuant to the state constitution's mandate. This policy decision further militates against a federal court intervening into the same. There is no question

---

[3] The State Board has not contested that they did not follow N.C.G.S. § 163-82.4(f)'s process for the November 5, 2024 state office general election. Instead, they belatedly argue that their eleven-month refusal to act was premised upon their interpretation of federal law. For the reasons discussed throughout, this position is contrary to both their original rationale in refusing to act and the very statutes they now cite.

that the process by which an invalid registration may be cured in time for the registrant's ballot to be counted in an election for state office, along with the impact of a failure to so cure, is a "policy problem[] of substantial public import," *see Quackenbush*, 517 U.S. at 726-727, for the duly qualified voters of North Carolina.

A state court can and should be the exclusive forum to decide these questions of substantial policy and significant public concerns. *See Johnson*, 199 F.3d at 720 (finding that a state court should have the first opportunity to decide questions of state policy, especially at their first impression). The district court recognized that entangling itself with these unanswered questions would be violative of the delicate balance between the federal rights the State Board asserts, and the countervailing state interests at issue. The district court correctly observed that these state interests outweighed any implicated federal rights and thus, *Burford* abstention was appropriate. *See Martin*, 499 F.3d at 365.

### ii.   The District Court correctly recognized that federal interference would be disruptive to North Carolina's state policies and procedures.

A state's ability to regulate its own elections for state and local offices is an "essential" and long-recognized right. *See Libertarian Party of Virginia v. Alcorn*, 826 F.3d 708, 714-15 (4th Cir. 2016). As such, this matter is one of significant public concern.

In *Griffin* it was argued that the State Board's role in supervising and conducting state elections brought the matter within the scope of *Burford*'s disruption of a uniform state policy consideration. *Griffin*, 25-1018, at D.E. 87, pp. 31-33. While Plaintiffs agree that the State Board's unique role in implementing and administering state election processes reflects the North Carolina legislature's intent for a coherent state policy, this matter goes a step further: here, the dispute centers on the State Board's tangible failure to comply with a distinct statutory procedure to cure deficient voter registration forms and duly count their ballots. JA22-25. The procedure itself contemplates uniformity across all 100 counties in North Carolina. Federal intervention into this state law process as applied solely to state law contests would be an intrusion on North

Carolina's "essential" function in regulating its own elections. *See Oregon*, 400 U.S. at 125.

To require the district court to reinsert itself into this process is to require it to become intimately familiar with and oversee the administration of 100 different county boards of election in performing state election contest functions. Much like the regulation of oil wells in *Burford*, such an intrusion into this intricate state statutory scheme would interfere with North Carolina's strong interest in having its state courts decide any issues which arise therefrom.

The State Board does not seriously engage with these questions of state procedures relating to curing deficient registrations. Instead, they globally recite the general procedures for opening an election protest, arguing that their asserted federal interests outweigh any related state interests. *See* Brief of North Carolina State Board of Elections, D.E. 29 at pp. 45-47 ("State Board Brief"). Tellingly, the State Board does not discuss or even cite the statutory procedure which is central to Plaintiffs' complaint.[4] *Id*. The State Board does not meaningfully address this core

---

[4] At most, the State Board gives N.C.G.S. § 163-82.4(a) passing recognition, relegating it to a single sentence and claiming it "merely implements HAVA." *See* State Board Brief, at p. 29. Even if overlap

32

distinction and resultingly identifies no countervailing federal interest outweighing the specific state procedure at issue.

### iii.    Abstention from cases removed pursuant to 28 U.S.C. § 1443(2) is permissible.

After arguing that this Court should only allow abstention in accordance with *Griffin*, the State Board pivots into claiming that abstention is never appropriate when 28 U.S.C. § 1443(2) is invoked. Looking beyond the contradictory nature of these conflicting positions, the State Board's arguments for a *per se* bar to abstention is unsupported.

As a threshold matter, the district court incorrectly concluded that removal under 28 U.S.C. § 1443(2) was proper. *See* Section III(b), *infra*. Assuming *arguendo* that such removal was proper, the State Board cannot point to any binding precedent which completely bars properly

---

between state and federal election statutes was outcome determinative, which it is not, *see Republican Nat'l Comm. v. Wetzel*, 120 F.4th 200, 205-06 (5th Cir. 2024) (citing *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 14 n.6 (2013)) (determining that the nature of election laws always results in some concurrent overlap between state and federal law, thus demanding a preemption analysis concerning a challenged state law), the State Board does not account for the fact that the cure process of N.C.G.S. § 163-82.4(f) is not found in HAVA. In fact, HAVA itself defers to state law in determining the validity and sufficiency of a registrant's information provided at the time of registration. *See* 52 U.S.C. § 21083 (a)(5)(A)(iii).

applied abstention doctrines, especially considering the Supreme Court's holding to the contrary in *Quackenbush*, 517 U.S. at 718.

In support of their proposition that abstention is completely inappropriate in the context of section 1443(2) removal, the State Board relies on a mixture of dicta and inapposite cases.[5] But this Court has never held in favor of the rule the State Board seeks to establish. To the contrary, this Court has expressly allowed abstention in voting rights cases. *See Circosta*, 978 F.3d at 100-03.

Similarly, the State Board's citation to *Kolibash v. Comm. on Legal Ethics of W. Va. Bar*, 872 F.2d 571, 573 (4th Cir. 1989) falls short of establishing a complete bar to abstention under section 1443(2). As the State Board recognizes, *Kolibash* was premised upon a removal under 28 U.S.C. § 1442, not 1443. *See Kolibash*, 872 F.2d at 573. Unlike section 1443, section 1442 is designed to protect federal officers who take affirmative actions under their duties in such a capacity. *Id.* at 574. In

---

[5] For example, the State Board's cited portion of *Greenberg v. Veteran*, 889 F.2d 418, 422 (2d Cir. 1989) is a single statement at the end of an opinion which the Second Circuit expressly stated was not addressed in the appeal. This is textbook dicta and should be afforded no weight. *See United States v. Horsley*, 105 F.4th 193, 212 (4th Cir. 2024) (citing *Pittston Co. v. United States*, 199 F.3d 694, 703 (4th Cir. 1999)).

34

contrast, section 1443(2), as invoked by the State Board here, is premised on a refusal to act in a manner demanded by state law due to alleged inconsistencies with certain federal laws. Put another way, the genesis of the claims presented is in state law. State courts are surely competent and available forums to resolve such claims.

Nevertheless, this Court need not reach the State Board's arguments regarding *Kolibash, Greenberg*, or *Jamison v. Wiley*, 14 F.3d 222 (4th Cir. 1994), because the Supreme Court's subsequent decision in *Quackenbush* directly counters the notion that abstention doctrines do not apply to cases where Congress has bestowed jurisdiction on federal courts. 517 U.S. at 718 ("[T]he authority of a federal court to abstain from exercising its jurisdiction extends to all cases in which the court has discretion to grant or deny relief.").The State Board was not barred from seeking a federal forum here; rather, they received their forum and, after careful consideration, the district court determined that the claims presented were more apt for state court review. This is not a unique outcome: this Court has previously held other forms of abstention as appropriate exercises of discretion in voting rights cases. *See Circosta*, 978 F.3d 100-03; *see also Harrison v. NAACP*, 360 U.S. 167, 176-77

(1959). The State Board cannot identify any precedent dictating that removal under section 1443(2) guarantees that the case proceeds exclusively in federal court, especially in light of *Quackenbush*, 517 U.S. at 718. Indeed, the *Griffin* order which the State Board asks this Court to apply here severely undercuts such an assertion.

As abstention is a creature of discretion, *see Chase Brexton Health Servs., Inc. v. Maryland*, 411 F.3d 457, 464 (4th Cir. 2005), affirming the district court's decision would not violate the text or purpose of section 1443(2), nor would it bar the statute's application in future cases if appropriate. Instead, it would recognize that the State Board received their federal forum and once that forum was received, the district court carefully considered the delicate balance of federalism implicated by the underlying claims. Both section 1443(2) and *Burford* abstention can coexist under such an approach.

## III. The District Court Lacked Removal Jurisdiction

Although its conclusion to abstain under *Burford* was correct, the district court erred in concluding that it had removal jurisdiction at all. In its removal petition, the State Board vaguely cited several familiar statutes, namely, 28 U.S.C. § 1441 and 1443(2). Regarding section 1441,

36

as the State Board later explained, it believes that its reading of statutes such as HAVA, the NVRA, and the VRA result in the complaint "necessarily rais[ing] federal issues." *See* State Board Brief, at pp. 29-32. Concerning section 1443(2), the State Board offered a *post hoc* justification for its refusal to comply with the state statutory procedures complained of as grounded in those same statutes, as well as Equal Protection.[6] Neither of these grounds for removal is proper, and the district court lacked jurisdiction from the removal's inception. Although the district court correctly determined that section 1441 was inapplicable, it erred in concluding that 1443(2) provided jurisdiction.

### a. Section 1441's narrow grounds are inapplicable as the State Board fails to satisfy the *Gunn-Grable* framework.

In a narrow subset of cases a district court may look beyond the well-pleaded complaint and inquire into whether the "plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law, in that federal law is a necessary element of one of the well-

---

[6] The State Board did not purport to invoke these statutes until long after their initial refusals to act. In fact, the State Board's original rationale for refusing to contact affected registrants was conditioned solely upon the State Board's interpretation of a separate state law. Thus, the State Board did not genuinely refuse to act under any colorable federal law providing for civil rights.

37

pleaded . . . claims." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808 (1988); *see also Burrell*, 918 F.3d at 380 (describing removal under the "substantial federal question doctrine" as applying to only "a slim category of cases"). A defendant seeking removal under these circumstances must establish that: (1) the federal question must be necessarily raised; (2) the federal question must be actually disputed; (3) the federal question must be substantial; and (4) the federal system must be able to hear the issue without disturbing any congressionally approved balance for federal and state judicial responsibilities. *See Gunn v. Minton*, 568 U.S. 251, 260 (2013); *see also Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005).

### i.    No federal questions are raised.

"[A] plaintiff's right to relief for a given claim necessarily depends on a question of federal law only when **every** legal theory supporting the claim requires the resolution of a federal issue." *Flying Pigs, LLC v. RRAJ Franchising, LLC*, 757 F.3d 177, 182 (4th Cir. 2014) (emphasis in original). "In other words, if the plaintiff can support [the] claim with even one theory that does not call for an interpretation of federal law, [the] claim does not arise under federal law[.]" *Dixon v. Coburg Dairy,*

38

*Inc.,* 369 F.3d 811, 818 (4th Cir. 2004). "The presence or absence of federal question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly-pleaded complaint. The rule makes the plaintiff the master of the claim." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (internal citation omitted). A party seeking removal may not invoke federal jurisdiction based upon a remedy or a defense. *Id.*; *see also Common Cause v. Lewis*, 358 F. Supp. 3d 505, 514 (E.D.N.C. 2019), *aff'd*, 956 F.3d 246 (4th Cir. 2020) (rejecting the argument that removal was proper because a state law challenge's remedy would conflict with federal law). Similarly, the presence of a tangential federal issue within a state law cause of action does not *per se* confer federal jurisdiction. *See Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 813 (1986).

The State Board premises its entire section 1441 argument on certain federal laws which, in the State Board's eyes, are implicated by the challenged state statutes solely because the state statutes generally may take some guidance from related federal statutes. The State Board's effort to recast the specifically challenged statutory procedures as mere

recitations of HAVA is contrary to their plain language and North Carolina's ability to independently govern its state election contests. Plaintiffs expressly disclaim any reliance on federal law or any relief affecting federal election contests. JA33-34.

The State Board's attempts to distinguish *Vlaming v. West Point School Board,* 10 F.4th 300 (4th Cir. 2021), and *American Airlines, Inc. v. Sabre, Inc.*, 694 F.3d 539 (5th Cir. 2012) is especially toothless considering the State Board's failure to account for the core statutory cure process at the center of this dispute. Not only is this process absent from HAVA, thus reflecting that the state statute does more than "recite" or "implement" HAVA, but it reveals how relief may be afforded without implication on the federal statutes the State Board cites. All the State Board can muster in response are, in essence, federal defenses, and it is black letter law that a defense cannot form the basis for removal. *See, e.g., Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 471, 475 (1998).

As the district court correctly recognized, the fact that federal statutes may overlap or mirror certain requirements of state law does not mean that one completely dictates the other. *See Oregon*, 400 U.S. at 124-25; *see also Griffin v. NCSBE, et al.*, 5:24-cv-00724-M, at D.E. 50, pp. 7-

40

8. The North Carolina legislature remains free to establish the "time, place, and manner" of its state and local elections, and N.C.G.S. § 164-82.4 is a clear example of the state exercising its sovereign prerogative. *See Alcorn*, 826 F.3d at 714-15; *see also Mazo v. New Jersey Sec'y of State*, 54 F.4th 124, 136 (3d Cir. 2022) (citing *Sugarman v. Dougall*, 413 U.S. 634, 647 (1973)) (stating that a state's discretion to dictate the conduct of its elections is "even broader" in state and local elections). As Plaintiffs' complaint makes clear, they do not seek any relief relating to any federal election contest. JA33-34. As a result, the only questions are ones of state law. Any federal defense or bar the State Board raises can be competently addressed by a state court as it confronts these novel issues of state law. *See Burt*, 571 U.S. at 19-20.

The argument that federal law controls because it might require the same general information as state law is unsupported. The question here is whether these persons were lawfully registered under state law when their defective registrations were processed and went uncured, and whether the State Board's intentional failure to fulfill their state law duties is a violation of Plaintiffs' rights under the North Carolina constitution. *See Mayor & City Council of Baltimore v. BP P.L.C.*, 388 F.

41

Supp. 3d 538 (D. Md. 2019), *aff'd*, 952 F.3d 452 (4th Cir. 2020), *vacated and remanded*, 593 U.S. 230 (2021), *and aff'd*, 31 F.4th 178 (4th Cir. 2022) (rejecting arguments which mischaracterized plaintiff's claims of state law duties as federal ones due to them "implicat[ing]" federal law); *see also Ass'n of Cmty. Organizations for Reform Now v. Miller*, 129 F.3d 833, 837 (6th Cir. 1997) (noting that just because federal registration obligations may affect state registration procedures does not mean that federal law controls in cases of state law registration requirements for the election of state officials).

### ii.    No federal questions are disputed.

Whether or not a disputed question of federal law exists is determined by looking at the substance of Plaintiffs' claims, along with any facts the parties agree upon. *See Pressl v. Appalachian Power Co.*, 842 F.3d 299, 305 (4th Cir. 2016). Where the parties agree about a federal law but disagree about a state law, courts routinely find that there is no federal question in dispute. *See, e.g., Mullins v. Dominion Energy S.C. Inc.*, No. 3:21-CV-03165-SAL, 2022 WL 1498293, at *4 (D.S.C. May 12, 2022) (finding that there was no federal question in dispute when the

parties agreed on defendants' federal licensure status but disagreed on duties owed to plaintiffs under state law).

Here there is no dispute as to federal law, mainly because there is no question of federal law raised by the complaint. The very essence of the complaint is a dispute over state law duties and rights afforded thereunder. The complaint turns exclusively on allegations of the State Board's violations of North Carolina law and how those acts directly and irreparably harmed Plaintiffs' rights under the North Carolina Constitution.

### iii.    There are no substantial federal questions presented.

"In general, 'a nearly pure issue of law, the resolution of which would establish a rule applicable to numerous ... cases' is substantial, while a 'fact-bound and situation-specific" issue is not.' *Columbus Emergency Grp., LLC v. Blue Cross & Blue Shield of N. Carolina*, No. 7:23-CV-1601-FL, 2024 WL 1342764, at *3 (E.D.N.C. Mar. 29, 2024) (quoting *Empire Healthchoice Insurance, Inc. v. McVeigh*, 547 U.S. 677, 681 (2006)).

The questions presented are intensely fact-bound to North Carolina law. Resolution of the questions arising from the State Board's failure to

43

follow state law procedures in curing deficient registration forms and their associated ballots cast in certain state election contests, by definition, can have no bearing on future cases for other state's elections. These questions are inseparably reliant on answers which are found in North Carolina law. Questions such as this do not satisfy the substantiality prong of *Gunn-Grable*. *See Burrell*, 918 F.3d at 385.

### iv. Federal court involvement in the questions presented would be massively disruptive to the state and federal balance.

The Constitution expressly delegates to the states the authority to establish and govern the time, place, and manner of their elections. *See, e.g., Clingman v. Beaver*, 544 U.S. 581, 586 (2005). The U.S. Supreme Court has consistently cautioned against federal courts instructing state actors on how to align their conduct with state law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). Fundamental principles of state sovereignty counsel that a state court should be the body to decide such foundational questions, all of which require the application and interpretation of North Carolina's substantive law. *See Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427-28 (1996). The

44

district court rightly chose not to disrupt this balance, and its decision should be affirmed.

**b. Removal under section 1443(2) is unsupported.**

The district court wrongly determined that it had removal jurisdiction under section 1443(2). *See* JA37; *see also Griffin*, 5:24-cv-00724, at D.E. 50 pp. 9-17. Removal under section 1443(2) "was intended to enable state officers who refused to enforce discriminatory laws in conflict with Section 1 of the Civil Rights Act of 1866 to remove their prosecutions to federal court." *Vlaming*, 10 F.4th at 310-11. The Supreme Court has construed the phrase "any law providing for equal civil rights" to include any law providing for "specific civil rights in terms of racial equality." *See Georgia v. Rachel*, 384 U.S. 780, 792 (1966). Plaintiffs do not seek any removal of persons from voter registration lists, nor do they ask for any relief beyond a uniform, non-discriminatory process which (1) identifies the individuals from whom the State Board failed to collect certain information required by state law; and (2) addresses these deficiencies in accordance with what state law provides.

Although the State Board invokes *RNC* with regard to the NVRA, this argument misses the mark. First, unlike in *RNC*, there is no state

45

statute which is completely reliant on federal law. 120 F.4th at 401. Here, the statutory procedure at issue is exclusively a creation of state law. Second, *RNC*'s rationale in finding that the NVRA is a proper basis for section 1443(2) removal as applied to unlawfully registered persons is questionable in light of the U.S. Supreme Court's order in *Beals v. VA Coal. for Immigrant Rts.* In *Beals*, Virginia was allowed to remove noncitizens from their voter registration rolls on the eve of an election. *See* No. 24A407, 2024 WL 4608863. Although *Beals* has not yet arrived at a final order, one of Virginia's primary arguments is that the NVRA does not cover persons who are not qualified to vote in the first place. *See Beals v. VA Coal. for Immigrant Rts.*, Emergency Application to Stay, 2024 WL 4605223, at *14-23 (S.Ct. Oct. 27, 2024). Plaintiffs argued the same basis in support of their motion to remand and maintain that their requested relief would distinguish between persons who are otherwise qualified to vote but-for the State Board's noncompliance with state law, and those who were not qualified to vote to begin with. By identifying and retaining the votes of qualified voters while removing those of any unlawful voters, the NVRA's quiet period is not implicated. As such, it cannot form a basis for section 1443(2) removal.

### i. The State Board's after-the-fact invocation of federal statutes to justify its prolonged refusal is contrary to the purpose of section 1443(2).

The issues arising from the State Board's faulty voter registration form and its subsequent refusal to contact the affected persons began in October 2023 when a concerned citizen filed the first of a series of administrative complaints with the State Board.[7] JA23-25. Through various forms and mediums, the State Board continually refused to contact these registrants and solicit their missing information. *Id.* at n.2. At the time, the State Board reasoned its refusal on the grounds that an affected person would self-cure their registration by providing identification when going to vote by virtue of North Carolina's voter identification statute. JA24-25. Looking beyond this unsupported rationale and the fact that at least 60,000 people with deficient registration forms voted in the November 5, 2024 state office election contests, the State Board did not once raise any federal law as the basis for its refusal until litigation ensued. This is likely because the State Board could not have raised such defenses at the time, as the State

---

[7]https://dl.ncsbe.gov/?prefix=HAVA%20Administrative%20Complaints/2023-10-06%20Snow/

Board's refusal began far in advance of the NVRA's ninety-day quiet period. JA23-25; *see also id.* at n.2. The State Board's belated invocation of federal statutes lacks both credibility and merit. Since its original decisions did not rely upon that rationale, the State Board improperly invokes section 1443(2).

## IV. The State Board's Requested Relief Is Untenable and Unsupported.

Aside from asking for an outcome in lockstep with this Court's order in *Griffin*, the sole case the State Board cites in support of its requested relief proves why such relief is untenable. *See Forty Six Hundred LLC v. Cadence Educ., LLC*, 15 F.4th 70 (1st Cir. 2021). At base, the State Board asks that this Court order the district court to "retrieve the case from state court" without identifying any procedural vehicle for doing so. Setting aside the fact that *Griffin* itself does not substantively engage with the functionality of the State Board's "request for a return" remedy, the State Board's own case undercuts this theory. Indeed, *Cadence Educ.* was premised upon a request for cooperation in returning a case to federal court in the absence of any mechanism to actually demand its retrieval. *Id.* at 80, 81. As the appellees in *Griffin* rightly observed, there are numerous instances in which other circuits have issued such "return"

48

orders to no avail. *See* Brief of Jefferson Griffin, 25-1018, at D.E. 87, pp. 55-60 (4th Cir. 2025). By issuing the letter of remand prior to the notice of appeal being filed, the district court divested itself of further jurisdiction. *See Express Scripts, Inc.*, 128 F.4th at 267-68. This court should affirm that well-reasoned decision.

Further, this case has substantially changed its posture since the State Board's removal. The matter now rests concurrently with the North Carolina Court of Appeals and the North Carolina Supreme Court on various pending petitions. Should this Court order the district court to resurrect its jurisdiction in whatever form it chooses, it is unclear what posture and petitions would follow the case to district court. Instead, the more prudent path would be to affirm the district court's abstention order under *Burford*, allowing the matter to progress fully through all levels of state court to a final decision by the North Carolina Supreme Court. Should the State Board then have colorable grounds to do so, any further review by a federal court would rest with the U.S. Supreme Court. *See* 28 U.S.C. § 1257.

## CONCLUSION

The district court did not abuse its discretion when it abstained and remanded this dispute to state court under *Burford*. The present matter

49

is uniquely one of state law, touching on foundational principles of state sovereignty. When this fact is coupled with the state administrative procedures at issue, the district court's chosen method of abstention becomes even more appropriate. This Court should affirm the decision below.

Respectfully submitted this, the 20th day of March, 2025.

> **NELSON MULLINS RILEY & SCARBOROUGH LLP**
> By: */s/ Phillip J. Strach*
> Phillip J. Strach
> North Carolina State Bar No. 29456
> Jordan A. Koonts
> North Carolina State Bar No. 59363
> 301 Hillsborough Street, Suite 1400
> Raleigh, North Carolina 27603
> Ph: (919) 329-3800
> phil.strach@nelsonmullins.com
> jordan.koonts@nelsonmullins.com
>
> *Counsel for Plaintiffs-Appellees*

## CERTIFICATES OF COMPLIANCE

I hereby certify that this brief complies with the word count limitations of this Court's Local Rules and the Federal Rules of Appellate Procedure, as it contains 10,169 words, exclusive of the parts exempted from such count by Rule 32(f) of the Federal Rules of Appellate Procedure. This brief complies with the typeface and style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6).

Respectfully submitted this, the 20th day of March, 2025.

/s/ *Phillip J. Strach*
Phillip J. Strach

CERTIFICATE OF SERVICE

I hereby certify that on this, the 20th day of March, 2025, this brief was filed with the Clerk of Court via CM/ECF, which will cause a true and accurate copy of the same to be served upon all registered counsel of record.

/s/ *Phillip J. Strach*
Phillip J. Strach