No. 25-1021

In the United States Court of Appeals
for the Fourth Circuit

TELIA KIVETT, et al.,

*Plaintiffs-Appellees*,

v.

NORTH CAROLINA STATE BOARD OF ELECTIONS, et al.,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Eastern District of North Carolina

**DEFENDANTS-APPELLANTS' REPLY BRIEF**

Terence Steed
tsteed@ncdoj.gov
Special Deputy Attorney General

Nicholas Brod
nbrod@ncdoj.gov
Deputy Solicitor General

N.C. DEPARTMENT OF JUSTICE
Post Office Box 629
Raleigh, North Carolina 27602
(919) 716-6567

*Counsel for Defendants-Appellants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... ii

ARGUMENT ........................................................................................................... 1

CONCLUSION ........................................................................................................ 8

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Burford v. Sun Oil Co.*,
   319 U.S. 315 (1943) ....................................................................................... 4

*Griffin v. N.C. State Bd. of Elections*,
   No. 25-1018(L) (4th Cir. Feb. 4, 2025) ................................... passim

*Griffin v. N.C. State Bd. of Elections*,
   --- S.E.2d ---, 2025 WL 1021724
   (N.C. Ct. App. Apr. 4, 2025) ........................................................... 3

**Statute**

28 U.S.C. § 1443(2) ............................................................................... 4, 5

**Other Authority**

*Griffin v. N.C. State Bd. of Elections*, No. COA25-181,
   Documentary Exhibits to Record on Appeal Vol. I (N.C. Ct. App.),
   bit.ly/4llqXw3 .................................................................................. 2

## ARGUMENT

In its opening brief, the Board showed that Plaintiffs' allegations here are identical in every material respect to those in the *Griffin* litigation. Opening Br. 14-17. Specifically, the Board established that both this case and *Griffin* arise out of the same election, challenge the same set of voters, proceed on the same underlying legal theory, and contest the same Board decision. Opening Br. 14-17. Thus, the Board believes that it would be appropriate to resolve this case in the same manner as this Court resolved *Griffin*—by remanding for the district court to modify its order to abstain under *Pullman* rather than *Burford*. If this Court disagrees that *Griffin* controls, however, the Board maintains that abstention of any kind was improper and that the federal courts should exercise plenary jurisdiction over this case. *See* Opening Br. 17-40.

Plaintiffs argue that this case is different from *Griffin* and that the district court's remand order abstaining under *Burford* should thus be affirmed. Their arguments lack merit.

*First*, Plaintiffs argue that the two cases "primarily diverge" on the relief requested. Resp. Br. 22. In *Griffin*, Plaintiffs contend, the

1

challenger sought the "outright removal . . . of voters from the election count." Resp. Br. 22. Here, by contrast, Plaintiffs seek a "cure process" that would allow voters with allegedly incomplete registrations to provide any missing information before their votes could be discarded. Resp. Br. 21-22. Plaintiffs reason that *Burford* abstention is uniquely appropriate on these facts, because the cure process that they seek is a complex state regulatory framework that federal courts should not disrupt. Resp. Br. 28-33.

To begin, Plaintiffs' argument is based on a false premise. The challenger in *Griffin* also sought the same remedy that Plaintiffs seek here: a process that would allow voters to "cure" allegedly incomplete registrations. In the state election protests that he filed, Judge Griffin sought a process in which the Board would "notify all voters" with allegedly incomplete registrations, "inform such voters that they have a cure period during which the voter can provide the missing information," and count the ballots of only those who complied. *Griffin v. N.C. State Bd. of Elections*, No. COA25-181, Documentary Exhibits to Record on Appeal Vol. I at 22-23 (N.C. Ct. App.), bit.ly/4llqXw3. In his brief to this Court, moreover, Judge Griffin, like Plaintiffs here,

2

specifically argued that North Carolina's state election laws established the kind of "intricate framework" that would justify abstention under *Burford*. No. 25-1018(L), Dkt. 87 at 22. And as part of the ongoing state-court proceedings in *Griffin*, the North Carolina Court of Appeals has since ruled that a cure process should be imposed that is similar to the process proposed by Plaintiffs here. *Griffin v. N.C. State Bd. of Elections*, --- S.E.2d ---, 2025 WL 1021724, at *14-15 (N.C. Ct. App. Apr. 4, 2025), *pet. for disc. review filed*, No. 320P24-3 (N.C. Apr. 6, 2025). Thus, a cure process is not unique to this case: The "primary" divergence that Plaintiffs have purported to identify between this case and *Griffin* is no divergence at all.

In any event, a cure process does not support *Burford* abstention here. As the state court of appeals acknowledged in its opinion, the process that it ordered did not implement any state statute or administrative regulation. *See id.* at *10. It was instead a judicially crafted remedy. *See id.* Because the ordered cure process does not concern an "organized system of regulation and review which . . . [state] statutes provide," *Burford* is inapplicable on these facts, even if they

3

diverge from the facts of *Griffin*. *Burford v. Sun Oil Co.*, 319 U.S. 315, 327 (1943).

*Second*, Plaintiffs contend that, unlike *Griffin*, this case does not involve the Board's removal to federal court of a writ of prohibition that was filed as an original action in the North Carolina Supreme Court. Resp. Br. 20. But in *Griffin*, this Court dismissed the Board's appeal of the district court's remand order in the writ of prohibition case as moot. *Griffin v. N.C. State Bd. of Elections*, No. 25-1018(L), Dkt. 132 at 8-9 (4th Cir. Feb. 4, 2025) (per curiam). This Court ruled instead on civil actions that Judge Griffin originally brought in Wake County Superior Court and that the Board removed to federal court under 28 U.S.C. § 1443(2). *Id.* at 9. Like Judge Griffin, Plaintiffs here brought a civil action against the Board in Wake County Superior Court. JA 12. In *Griffin*, as here, the Board removed the civil action to federal court under section 1443(2). JA 7-9. The two cases are thus identical in these respects.

*Third*, Plaintiffs argue that Judge Griffin challenged different groups of North Carolina voters. Resp. Br. 20-21. Yet Plaintiffs concede, as they must, that they are challenging the same group of

4

voters with allegedly incomplete registrations that Judge Griffin is challenging. Resp. Br. 8; *see also* Resp. Br. 21 ("Plaintiffs do not dispute that many of their allegations stem from the State Board's same unjustifiable failures to contact persons with statutorily deficient registrations and correct those registrations prior to the November 5, 2024 general election."). That Judge Griffin also challenged additional voters not at issue here does not change this overlap. *See Griffin*, No. 25-1018(L), Dkt. 132 at 5 (describing the two additional categories of voters Judge Griffin challenged).

*Fourth*, Plaintiffs argue that they are bringing "unique" state constitutional claims that were not at issue in *Griffin*. Resp. Br. 22. Specifically, Plaintiffs assert vote-dilution claims under the state constitution. JA 28-30. That difference, however, is not relevant to the legal analysis. In *Griffin*, this Court held that the district court correctly concluded that it had jurisdiction under 28 U.S.C. § 1443(2) based on the Board's refusal to take action that would violate the federal civil-rights laws. No. 25-1018(L), Dkt. 132 at 9. This conclusion did not—and could not—depend on the nature of the plaintiff's underlying claims. *Id.* It turned instead on the grounds for the Board's

5

refusal to take action, grounds that are the same across the two cases. *Compare id.* (listing the Board's grounds for refusal), *with* JA 7-9 (notice of removal). Purporting to take on the mantle of state sovereignty, Plaintiffs—a political party and two voters—argue that their state constitutional claims should only be resolved in state court. *See* Resp. Br. 1. But under the text of section 1443(2), it is the Board's position, as a state agency refusing to engage in conduct that would violate the federal civil-rights laws, that matters.

Nor do Plaintiffs explain how their vote-dilution claims could change this Court's conclusion that *Pullman*, rather than *Burford*, is the appropriate abstention doctrine. As this Court explained in *Griffin*, *Pullman* applies when "there is (1) an unclear issue of state law presented for decision (2) the resolution of which may moot or present in a different posture the federal constitutional issue such that the state law issue is potentially dispositive." *Griffin*, No. 25-1018(L), Dkt. 132 at 10 (citation omitted). Any unsettled state-law issues about the effect of an allegedly incomplete voter registration that were at issue in *Griffin* are the same here, regardless of whether they happen to arise under the

6

state constitution, as Plaintiffs' claims do, or some other source of state law.

*Fifth*, Plaintiffs contend that they could invoke state statutes allowing them to challenge not only the results for the North Carolina Supreme Court seat at issue in the *Griffin* litigation but also other state contests that have already been certified. Resp. Br. 23 (citing N.C. Gen. Stat. §§ 1-515, -516). Plaintiffs claim that they "raised arguments" about these statutes in state court, Resp. Br. 23, but Plaintiffs did not cite the statutes in their complaint. *See* JA 12-36. Nor do Plaintiffs explain how they could proceed under these statutes, which by their terms apply only to the Attorney General. At most, Plaintiffs have identified a state-law issue that would support, rather than undermine, applying *Pullman* abstention here, as in *Griffin*.

\* \* \*

Having failed to identify any material differences between the two cases, Plaintiffs resort to criticizing this Court's decision in *Griffin*. Resp. Br. 12, 20. The Board respectfully disagrees with the Court's decision in *Griffin* and maintains its assertion that no abstention of any form should apply here. *See* Opening Br. 17-40. However, the Board

7

nevertheless acknowledges that it would be appropriate for this Court to take the same approach in these two cases, arising as they do in materially identical circumstances, on materially identical facts.

Plaintiffs' claim that the Board has supposedly advanced "contradictory" arguments, Resp. Br. 3 n.1, misunderstands the Board's position. If the Court concludes that it should take a different approach here than in *Griffin*, the Board continues to believe that the federal courts should exercise primary jurisdiction in this case without abstaining in any form. *See* Opening Br. 17-40.

## CONCLUSION

The Board respectfully requests that this Court remand with instructions for the district court to modify its remand order consistent with *Griffin*. If the Court concludes that *Griffin* does not control, this Court should reverse the district court and remand with instructions that the district court retrieve the case from state court and exercise federal jurisdiction over the merits of this dispute.

Respectfully submitted, this the 10th of April, 2025.

/s/ Terence Steed
Terence Steed
Special Deputy Attorney General

8

Nicholas Brod
Deputy Solicitor General

North Carolina Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602
(919) 716-6400

*Counsel for Defendants-Appellants*

9

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 1,537 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) & (6) because it has been prepared in a proportionally spaced typeface: 14-point Century Schoolbook font.

This the 10th day of April, 2025.

/s/ Terence Steed
Terence Steed
Special Deputy Attorney General

## CERTIFICATE OF SERVICE

I certify that I have this day filed the foregoing brief with the Clerk of Court using the CM/ECF system, which will automatically serve electronic copies on all counsel of record.

This the 10th of April, 2025.

/s/ Terence Steed
Terence Steed
Special Deputy Attorney General